THE HONORABLE THOMAS S. ZILLY

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

| | | |
|---|---|---|
| NATIONAL WILDLIFE FEDERATION, <u>et al.</u>, | ) ) ) | NO. C03-2824-Z |
| Plaintiffs, | ) ) ) | FEDERAL DEFENDANT'S COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | ) ) ) | |
| TOM RIDGE, Secretary of the Department of Homeland Security[1]/, | ) ) ) ) | NOTE ON MOTION CALENDER: RE-NOTED FOR APRIL 23, 2004 |
| Defendant. | ) ) | |
| and | ) ) | |
| NATIONAL ASSOCIATION OF HOMEBUILDERS, et. al., | ) ) ) | |
| Intervenor Defendants | ) ) | |
| _____ | ) | |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

------

[1]/  Pursuant to the Homeland Security Act of 2002, Pub. Law 107-296, 5 U.S.C. §§ 301 <u>et seq.</u>, Section 503 transferred to the Secretary of the Department of Homeland Security (DHS) all functions, personnel, and liabilities of the Federal Emergency Management Agency (FEMA).  Pursuant to Fed. R. Civ. P. 25(d), Secretary Tom Ridge of the Department of Homeland Security should be substituted as the proper Defendant in the above-captioned matter.

26

27

28

# TABLE OF CONTENTS

PAGES

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.  The National Flood Insurance Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.  Sale of Flood Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2.  Encouraging Sound Flood Management Ordinances . . . . . . . . . . . . . . 4

3.  Identifying and Mapping Flood Hazard Areas . . . . . . . . . . . . . . . . . . 6

B.  Section 7 of the Endangered Species Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A.  Plaintiffs Fail To Establish Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B.  Consultation Is Not Required Because the NFIP Is Not A Discretionary Action For Purposes of the ESA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1.  Congress Did Not Authorize FEMA to Limit the Availability of Flood Insurance Under the NFIP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

a.  The Statutory Language of the NFIA Does Not Confer Discretion To FEMA To Consider Protected Species. . . . . . . . . . . . . . . . . . 10

b.  The Legislative History Further Confirms That FEMA Does Not Have Discretion To Consider Protected Species. . . . . . . . . . . . . 12

c.  The Community Ratings System . . . . . . . . . . . . . . . . . . . . . . . . . 13

2.  FEMA's Authority Fits Squarely Within Ninth Circuit Precedent Concerning Nondiscretionary Agency Actions Not Subject to Consultation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3.  Key Deer is Inapposite. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4.  The ESA Cannot Expand FEMA's Authority To Implement the NFIP . 19

C.  Plaintiffs Fail To Demonstrate That The NFIP "May Affect" Chinook Salmon. 22

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

CASES                                                                                    PAGES

Alaska Department of Environmental Conservation v. EPA, 124 S.Ct. 983,  1001 (2004) . . .   18

American Forest & Paper Ass'n v. EPA, 137 F.3d 291, 299 (5th Cir. 1998) . . . . . . . . . .   20 , 24

American Iron & Steel Inst. v. EPA, 115 F.3d 979, 992 (D.C. Cir. 1997) . . . . . . . . . . . . . .   20

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 24748 (1986) . . . . . . . . . . . . . . . . . . . . . . .   8

Auer v. Robbins, 519 U.S. 452, 462 (1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Barnhart v. Walton, 535 U.S. 212, 220 (2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Center for Biological Diversity v. NMFS, No. C011706VRW, 2001 WL
    1602707 *3 (N.D. Cal. Nov. 28, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) . . . . . . . . . . . . .   8

Environmental Protection Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073,
    1081 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9 , 15 , 16

Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 388 (9th Cir. 2000) . . . . . . . . . . . . . . . . . .   2

Florida Key Deer v. Stickney, 864 F. Supp. 1222 (S.D. Fla. 1994)  . . . . . . . . . . . . . . . . .   18 , 23

Hawaii Green Party v. Clinton, 124 F.Supp.2d 1173, 1190 (D. Haw. 2000)  . . . . . . . . . . . . .   11

latte River Whooping Crane Critical Habitat Maintenance Trust v. FERC,
    962 F.2d 27, 34 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19 , 20

Lujan v. Defenders of Wildlife, 504 U.S. 555, 56061 (1992) . . . . . . . . . . . . . . . . . . . . . . . .   8 , 9

Marbled Murrelet v. Babbitt, 111 F.3d 1447, 144950 (9th Cir. 1997)  . . . . . . . . . . . . . . . . . .   19

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) . . . . . . .   8

National Wildlife Fed'n v. Coleman, 529 F.2d 359 (5th Cir. 1976)  . . . . . . . . . . . . . . . . . . . . .   23

Natural Resources Defense Council v. Houston, 146 F.3d 1118, 112526 (9th Cir. 1998) . . . .   17

Pacific Rivers Council v. Thomas, 30 F.3d 1050, 1054 n. 8 . . . . . . . . . . . . . . . . . . . . . . . . . .   22

Sierra Club v. Babbitt, 65 F.3d 1502, 1509 (9th Cir. 1995)  . . . . . . . . . . . . . . . . . . . .   2 , 9 , 15

Sierra Club v. Glickman, 156 F.3d 606, 616 (5th Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . .   21

Sodowski v. NFIP, 834 F.2d 653 (7th Cir. 1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Southwest Center for Biological Diversity v. United States Bureau of
    Reclamation, 143 F.3d 515, 522 (9th Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Southwest Ctr. for Biological Diversity v. United States Forest Service,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

100 F.3d 1443, 144748 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

Strahan v. Linnon, 967 F. Supp. 581 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . .   19

Texas Landowners Rights Ass'n v. Harris, 453 F. Supp. 1025, 1030 (D.D.C. 1978) . . . . . . . .   3

Turtle Island Restoration Network v. National Marine Fisheries Service,
    340 F.3d 969, 975 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9 , 16 , 17 , 21

Wind River Mining Corp. v. United States, 946 F.2d 710, 712 (9th Cir. 1991) . . . . . . . . . . .   11

**FEDERAL STATUTES**                                                                 **PAGES**

5 U.S.C. § 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
5 U.S.C. § 706(2)(A) (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

16 U.S.C. § 1531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6 , 7
16 U.S.C. § 1532(15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
16 U.S.C. § 1533 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
16 U.S.C. §§ 1533(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
16 U.S.C. § 1536 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21
16 U.S.C. § 1536(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
16 U.S.C. § 1540(g)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
16 U.S.C. § 55015509 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16 , 17

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

42 U.S.C. § 4001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2 , 3 , 10
42 U.S.C. § 4001(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
42 U.S.C. § 4001(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3
42 U.S.C. § 4001(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3
42 U.S.C. § 4001(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13 , 17
42 U.S.C. § 4011(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4 , 16
42 U.S.C. § 4012(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4 , 5 , 10 , 12 , 20
42 U.S.C. § 4014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
42 U.S.C. § 4022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4 , 5 , 10
42 U.S.C. § 4022(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
42 U.S.C. § 4022(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5 , 13
42 U.S.C. § 4022(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
42 U.S.C. § 4081 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
42 U.S.C. § 4101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 6, 16
42 U.S.C. § 4101(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
42 U.S.C. § 4102(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5 , 10 , 11
42 U.S.C. § 4104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
42 U.S.C. § 4128(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
42 U.S.C. § 5121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

**FEDERAL REGULATIONS**

44 C.F.R. § 10.4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21
44 C.F.R. Part 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
44 C.F.R. § 59.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
44 C.F.R. Part 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
44 C.F.R. Part 62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 20
44 C.F.R. § 62.23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

44 C.F.R. Part 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
50 C.F.R. § 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 , 19, 23
50 C.F.R. § 402.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
50 C.F.R. § 402.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 , 9 , 16 , 21 ,  22
50 C.F.R. § 402.11(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
50 C.F.R. § 402.12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
50 C.F.R. § 402.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
50 C.F.R. § 402.14(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 , 22, 23
50 C.F.R. § 402.14(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
50 C.F.R. § 402.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

51 Fed. Reg. 19,926, 19,932 (June 3, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
64 Fed. Reg. 14,308 (Mar. 24, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

STATE REGULATIONS

WAC 365-195-925 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

WAC 173-26-221(3)(B)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

LEGISLATIVE MATERIALS

1968 U.S.C.C.A.N. 2873 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
1973 U.S.C.C.A.N. 3217 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

H.R. Rep. 3191 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

P.L. 103325, title 5, 108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
P.L. 93234, 87 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

87 Stat. 975 (Dec. 31, 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
108 Stat. 2160 (Sept. 23, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

## I.  INTRODUCTION

On September 16, 2003, Plaintiffs brought this action against the Federal Defendant, Tom Ridge,  Secretary of the Department of Homeland Security ("Secretary"), alleging that the Federal Emergency Management Agency ("FEMA") failed to comply with Section 7 of the Endangered Species Act ("ESA").  Plaintiffs initially claimed that the Secretary had violated both Section 7(a)(1) and 7(a)(2) of the ESA.  See Complaint Claims for Relief I and II.  Plaintiffs have since requested this Court to dismiss the Section 7(a)(1) claim with prejudice because the Secretary has fulfilled his obligations under this provision of the ESA.  See Pls.' Mem. (Attachment # 21 (Stipulation of Voluntary Dismissal of Plaintiffs' Second Claim for Relief)).[2]/ Thus, the sole remaining issue in this case is whether the Secretary is required to consult with the National Marine Fisheries Service ("NMFS") on the National Flood Insurance Program ("NFIP") pursuant to Section 7(a)(2) of the ESA for the Puget Sound chinook salmon.[3]/

Plaintiffs challenge FEMA's implementation of the NFIP under the ESA because they seek a federal presence to prohibit further development in the Puget Sound floodplain.  In executing their strategy, Plaintiffs mischaracterize the NFIP as an agency action that has regulatory control over development in the Puget Sound floodplain. To the contrary, the NFIP does not authorize FEMA to permit, fund, build, or authorize development or construction in the Puget Sound floodplain.  Rather, in applying a "carrot and stick" approach to induce participation in the NFIP, the Federal government makes flood insurance available to the public at reasonable rates in exchange for assurances that participating communities have adopted sound floodplain management ordinances that generally constrict development in the floodplain.  Congress, through the enactment of the NFIP, did not authorize FEMA to assume regulatory control over development in the floodplain.  Nevertheless, in an attempt to avoid the inescapable conclusion

---

[2]/  The administrative record that Plaintiffs refer to in their brief was compiled for the Section 7(a)(1) claim. Because Plaintiffs have conceded this claim, Plaintiffs' reference to this "administrative record" is inapposite. Nevertheless, many of the documents that were included in the record are useful in demonstrating that the Secretary has not violated the ESA § 7(a)(2).  Thus, Defendant will use the same citation form as Plaintiffs: AR ___.

[3]/  The Puget Sound chinook salmon evolutionary significant unit ("ESU") was listed as threatened on March 24, 1999.  See 64 Fed. Reg. 14,308 (Mar. 24, 1999); AR 5.  The critical habitat, however, was subsequently vacated. AR 41.

that FEMA does not have a regulatory presence in the floodplain, Plaintiffs argue that the "carrot and stick" approach employed by FEMA triggers the consultation requirements of Section 7(a)(2). Plaintiffs' theory, and their supporting arguments, severely mis-characterize the ESA and Ninth Circuit case-law interpreting Section 7(a)(2) of the ESA.

Contrary to Plaintiffs' assertions, federal agencies are not required to consult on every action. The Ninth Circuit's interpretation of Section 7(a)(2) is very clear – an agency must consult only on actions where it has <u>discretion</u> to implement measures that would "inure to the benefit of protected species." <u>Sierra Club v. Babbitt</u>, 65 F.3d 1502, 1509 (9th Cir. 1995) ("<u>Sierra Club</u>"). This interpretation is logical because an agency may not avoid its ministerial duties or exceed its statutory authority to protect endangered or threatened species.

Congress has not provided FEMA with the authority to consider protected species under the NFIP, nor has it authorized FEMA to regulate development in the floodplain. Thus, FEMA does not have discretion to implement measures under the NFIP that would inure to the benefit of the Puget Sound chinook salmon. Furthermore, Plaintiffs fail to demonstrate that the NFIP "may affect" Puget Sound chinook salmon. Accordingly, even if Plaintiffs could identify a final agency action for standing purposes and properly invoked this Court's jurisdiction, FEMA is not required to consult on the NFIP under Section 7(a)(2) of the ESA.

## II. BACKGROUND

### A.    The National Flood Insurance Program

The National Flood Insurance Program is a federally-subsidized program designed to make affordable flood insurance available to the general public at or below actuarial rates. 42 U.S.C. § 4014; <u>Flick v. Liberty Mut. Fire Ins. Co.</u>, 205 F.3d 386, 388 (9th Cir. 2000). Congress passed the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001 <u>et seq.</u>, in response to its concern over the enormous "personal hardships and economic distress [caused by flood damage] which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources [caused by flood disasters]." 42 U.S.C. § 4001(a)(1); <u>see also</u> <u>Id.</u> § 4002(a)(5) ("the Nation cannot afford the tragic losses of life caused annually by flood occurrences, nor the increasing losses of property suffered by flood victims"). The NFIP was

further modified in 1973 and then again in 1994 with the passage of the Flood Disaster Protection Act and the National Flood Insurance Reform Act (collectively "Act" or "NFIA"). 42 U.S.C. § 4001 et seq.; P.L. 93-234, 87 Stat. 975 (Dec. 31, 1973); P.L. 103-325, title 5, 108 Stat. 2160 (Sept. 23, 1994).

The objectives of the Act were to "make insurance against flood damage available, encourage persons to become aware of the risk of occupying the flood plains, and reduce the mounting Federal expenditures for disaster relief assistance." "Housing and Urban Development Act of 1968," (House Committee on Banking and Currency Report) 90th Cong. 2d Sess., H.R. Rep. 1585 at 90, 1968 U.S.C.C.A.N. 2873, 2966; see also S. Rep. No. 93-583, 1973 U.S.C.C.A.N. 3217, 3218-19. The Act enables the public to overcome the devastation accompanying floods by providing "a reasonable method of sharing the risk of flood losses . . . through a program of flood insurance which can complement and encourage preventive and protective measures." 42 U.S.C. § 4001(a)(3).

In furtherance of the two principal objectives of the 1968 Act, the NFIP has two components: (1) the actual sale of flood insurance; and (2) encouraging communities to adopt sound land use regulations for development in the floodplain. These two components work in conjunction, because the availability of flood insurance is contingent on communities implementing FEMA's minimum criteria. See Texas Landowners Rights Ass'n v. Harris, 453 F. Supp. 1025, 1030 (D.D.C. 1978), aff'd 598 F.2d 311 (D.C. Cir. 1979) (the NFIP is a "'carrot and stick' inducement"). Additionally, as a prerequisite to achieving these objectives, Congress recognized the need to identify flood hazard areas and mandated FEMA to identify and maps the flood hazards nationwide. 42 U.S.C. § 4101.

**1.** **Sale of Flood Insurance** - Congress found that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions" and, therefore, authorized the creation of the NFIP "with large-scale participation of the Federal Government and carried out to the maximum extent practicable by the private insurance industry." 42 U.S.C. § 4001(b); see generally, Sodowski v. NFIP, 834 F.2d 653 (7th Cir. 1987). Congress expressly mandated

FEMA to carry out a "program which will enable interested persons to purchase insurance against loss resulting from physical damage to or loss of real property or personal property related thereto arising from any flood occurring in the United States." 42 U.S.C. § 4011(a).  In defining FEMA's authority to sell or underwrite flood insurance, Congress limited the agency's role:

> The Director shall make flood insurance available in only those States or areas (or subdivisions thereof) which he has determined have -
>
> (1) evidenced a positive interest in securing flood insurance coverage under the flood insurance program, and
>
> (2) given satisfactory assurance that by December 31, 1971, adequate land use and control measures will have been adopted for the State or area (or subdivision) which are consistent with the comprehensive criteria for land management and use developed under section 4102 of this title . . .

42 U.S.C. § 4012(c); see also 42 U.S.C. § 4022(a)(1).  Federal flood insurance is marketed to the public in one of two ways: directly by FEMA, see 44 C.F.R. § 62, or through the Write Your Own ("WYO") program, which authorizes FEMA to "enter into arrangements with individual private sector property insurance companies [WYO companies] . . . [whereby] such companies . . . may offer flood insurance coverage under the program to eligible applicants."  44 C.F.R. § 62.23(a); 42 U.S.C. § 4081.

    **2.**    **Encouraging Sound Flood Management Ordinances** - Participation in the NFIP is voluntary.  To qualify for Federal flood insurance, participating communities must give FEMA satisfactory assurances, that "adequate land use and control measures" have been adopted by the State or local government consistent with "the comprehensive criteria for land management and use developed under section 4102 of this title." 42 U.S.C. § 4012(c); see also 42 U.S.C. § 4022. The NFIP is not directed "toward the prohibition of development but, rather, toward encouraging the appropriate development of flood plain areas in light of the flood risk").  AR 100 at 33 (Final Environmental Impact Statement (1976)).  "[T]he initial land use measure required of a community under the program entails merely the adoption of a building permit system . . . and a commitment to evaluate flood hazards insofar as they are known locally at the time of the issuance of any local building permit." S. Rep. No. 93-583 at 19, 1973 U.S.C.C.A.N. at 3234; Id.

at 20 ("in return for the enforcement of local flood plain regulations . . .the Government is willing to provide substantial flood insurance protection at roughly 10 percent of its actual cost.").

In order for a property owner to purchase flood insurance under the NFIP, the property must be located within the jurisdiction of a participating community.  42 U.S.C. § 4022. Congress clearly limited the extent of FEMA's authority to design comprehensive land use criteria.  The statute provides:

> [T]he Director shall from time to time develop comprehensive criteria designed to encourage, where necessary, the adoption of adequate State and local measures which, to the maximum extent feasible, will -
>
> (1) constrict the development of land which is exposed to flood damage where appropriate,
>
> (2) guide the development of proposed construction away from locations which are threatened by flood hazards,
>
> (3) assist in reducing damage caused by floods, and
>
> (4) otherwise improve the long-range land management and use of flood-prone areas . . .

42 U.S.C. § 4102(c); see also 44 C.F.R. Part 59 and 60.  The minimum land use criteria were developed in 1976 and promulgated nationwide.  44 Fed. Reg. 46,975 (Oct. 26, 1976); see also 44 C.F.R. Part 60.  Once a community implements adequate land use measures, FEMA must perform the ministerial act of selling flood insurance.  42 U.S.C. § 4012(c); Id. § 4022(a)(1).

Encompassed within the minimum criteria is the Community Rating System ("CRS"), which provides discounts on flood insurance premiums in communities that independently choose to establish additional floodplain management regulations that exceed FEMA's minimum criteria. Congress again was clear:  "The Director shall carry out a community rating system program, under which communities participate voluntarily." 42 U.S.C. §§ 4022(b)(1).  As indicated by the language, any participation by the community is completely voluntary.  If communities choose to adopt more stringent land use measures, FEMA will reduce its flood insurance premiums.  FEMA, however, cannot dictate the content of those regulations, much less force their compliance.  42 U.S.C. § 4022(b).  FEMA merely encourages communities and provides examples of premium-reducing activities, but any decision to participate is left to the

sole judgment of a willing community.  Id.

**3.    Identifying and Mapping Flood Hazard Areas** - To achieve the two stated

purposes of the Act, to sell flood insurance and encourage the adoption of sound floodplain

management, Congress mandated FEMA to identify and publish Flood Insurance Rate Maps

("FIRM's") that detail the floodplain in each individual community that chooses to participate in

the NFIP.  42 U.S.C. §§ 4101, 4104; see also 44 C.F.R. Part 65.   The map is generated by

determining the elevation around flood-prone areas, commonly referred to as the "base flood

elevation" ("BFE").  Anything at or below the BFE is considered to be in the floodplain or the

Special Flood Hazard Area ("SFHA").  44 C.F.R. § 59.1.  The FIRM is "an official map of a

community, on which the Administrator [of the Flood Insurance Program] has delineated both

the special hazard areas and the risk premium zones applicable to the community."  Id.

As set forth below, there is no evidence that, when the NFIP was created in 1968,

Congress intended to give FEMA the authority to consider wildlife in carrying out any of the

purposes of the NFIA.  In fact, in 1994 Congress considered amending the purposes of the NFIP

to include language that would have granted FEMA the discretion to structure their program to

benefit protected species.  H.R. Rep. 3191, 2d Sess. 103rd Cong., 140 Cong. Rec. (May 3, 1994);

AR 104 at 2.  Not only was this language expressly rejected, but there is clear legislative history

that demonstrates Congress did not intend for FEMA to consider endangered or threatened

species when implementing the NFIP.  As one House Representative stated: "The NFIP is an

insurance program.  It is not an environmental program, and it has never been."  National Flood

Insurance Reform Act of 1994, 140 Cong. Rec. H2951-02, 2964 (May 3, 1994) (debate on H.R.

3191); AR 104 at 42.

**B.    Section 7 of the Endangered Species Act**

The ESA, 16 U.S.C. §§ 1531 et seq., was enacted in 1973 "to provide a means whereby

the ecosystems upon which endangered species and threatened species depend may be conserved,

[and] to provide a program for the conservation of such endangered species and threatened

species."  Id. § 1531(b).  For the purposes of the Act, an endangered species is a species that is

"in danger of extinction throughout all or a significant portion of its range," while a threatened

species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(6), (20).  Species are listed as endangered or threatened through the rulemaking procedures mandated by 16 U.S.C. § 1533.[4]/

If a species is listed as endangered or threatened, the species is then afforded certain legal protections.  Section 7 of the ESA requires each federal agency to ensure that any action authorized, funded, or carried out by the agency "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat.  16 U.S.C. § 1536(a)(2).  To achieve this objective, the agency proposing the action ("the action agency") is required to consult with NMFS or FWS (together "the Services") whenever a federal action "may affect" a threatened or endangered species.  Id.; 50 C.F.R. § 402.14(a).  Through formal rulemaking, the Services have defined the obligation to consult under Section 7 to apply "to all actions in which there is discretionary Federal involvement or control."  50 C.F.R. § 402.03 (emphasis added).

Consultation sometimes begins with "informal consultation," wherein the action agency proposing a discretionary action that may affect a listed species consults with NMFS or FWS, or both, to determine whether the proposed action is likely to adversely affect a listed species.  See 50 C.F.R. § 402.13 (informal consultation "is an optional process that includes all discussions, correspondence, etc.").  If the action agency determines that the proposed, discretionary action is likely to adversely affect a listed species, formal consultation is required.  Id. § 402.14(a).  Formal consultation typically begins with a written request by the action agency, 50 C.F.R. § 402.14(c), and concludes with the issuance of a biological opinion by the Service.  Id. § 402.14(l)(1).  The biological opinion will assess the likelihood that the proposed action will jeopardize the continued existence of the species and/or result in the destruction or modification of designated critical habitat.  See id. § 402.14(g) (discussing Service's responsibilities during formal consultation).

---

[4]/  Responsibility for administration of the ESA, including designation of species as endangered or threatened, is conferred upon the Secretaries of Commerce and Interior, depending upon the species in question. 16 U.S.C. §§ 1533(a), 1532(15).  The Secretary of Commerce administers the ESA through NMFS, and the Secretary of the Interior administers the ESA through the Fish and Wildlife Service ("FWS").  In this case, the Puget Sound chinook salmon is regulated by NMFS.

### III.  STANDARD OF REVIEW

Summary judgment must "be rendered forthwith" if the evidence presented to the district court, including pleadings, depositions, answers to interrogatories, and affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. Rule 56(c).  As the Supreme Court has stated, "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; . . . there [must] be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  A factual dispute is "material" only if it may affect the outcome of the suit; factual disputes that are irrelevant, unnecessary, or non-probative have no bearing on summary judgment. <u>Anderson</u>, 477 U.S. at 248.

Plaintiffs bring this action under the citizen suit provision of the ESA.  16 U.S.C. § 1540(g)(1)(A).  Because the ESA does not provide its own standard for review, reference to the standards set forth in the Administrative Procedure Act ("APA") is required. <u>Southwest Center for Biological Diversity v. United States Bureau of Reclamation</u>, 143 F.3d 515, 522 (9th Cir. 1998).  Under the APA, the standard for judicial review of agency action is whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  <u>See</u> <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971).  The scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the agency.  <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983).

### IV.  ARGUMENT

**A.  <u>Plaintiffs Fail To Establish Standing</u>.**

The Secretary hereby adopts and joins the Intervenor-Defendants' Motion to Exclude Expert Testimony of Alan R. Wald and Cleveland R. Steward, III, and Intervenor-Defendants' argument that Plaintiffs have failed to establish standing in this case.  In short, Plaintiffs have failed to carry their burden under <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992), of adequately identifying by affidavit: (1) a concrete injury, namely what FEMA action is

actually harming the Plaintiffs; (2) how FEMA's alleged action caused this injury; and (3) whether this injury may be redressed with FEMA's limited authority under the NFIA. Furthermore, Plaintiffs' broad, programmatic challenge to the implementation of the NFIP in the Puget Sound area is impermissible under Lujan, 504 U.S. at 568; see also Washington Toxics Coalition v. EPA, No. C-01-132-C (W.D. Wash. July 2, 2002), in that Plaintiffs have not identified and challenged a reviewable final agency action. Therefore, Plaintiffs fail to establish any basis for judicial review. However, as set forth below, even if the Court finds that Plaintiffs' claims are cognizable, FEMA's actions do not trigger ESA Section 7 consultation requirements as a matter of law.

**B.    Consultation Is Not Required Because the NFIP Is Not A Discretionary Action For Purposes of the ESA.**

Plaintiffs' entire case rests on one fundamental mis-characterization of the ESA – that all agency actions are subject to Section 7(a)(2). Although the obligation to consult is indeed broad, it is not without limitations. Section 402.03 provides that " Section 7 and the requirements of this part apply to all actions in which there is discretionary Federal involvement or control." 50 C.F.R. § 402.03 (emphasis added). Under the Ninth Circuit's interpretation of this regulation, an agency must possess discretion under the statutory framework and the authority to exercise this discretion in such a manner that it may implement measures that will "inure to the benefit of the protected species." Sierra Club v. Babbitt, 65 F.3d 1502, 1509 (9th Cir. 1995); see also Environmental Protection Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073, 1081 (9th Cir. 2001). The fact that an agency has some general discretion to perform an action is simply not enough to trigger consultation; the purposes underlying the Act must allow the agency to consider protected species. Turtle Island Restoration Network v. National Marine Fisheries Service, 340 F.3d 969, 975 (9th Cir. 2003). Plaintiffs' claims fail as a matter of law, because FEMA does not possess the discretion necessary to implement measures pursuant to the NFIP that will inure to the benefit of protected species. Congress has not provided FEMA with the authority under the NFIA to implement the NFIP in such a manner that it can benefit the Puget Sound chinook salmon. Accordingly, because FEMA does not have the necessary discretion,

consultation under Section 7 is not required pursuant to Section 402.03.

**1.      Congress Did Not Authorize FEMA to Limit the Availability of Flood Insurance Under the NFIP.**

As evidenced by the plain language and legislative history of the NFIA, Congress has made it abundantly clear that FEMA is mandated to issue flood insurance where communities have met minimum eligibility requirements.  42 U.S.C. § 4012(c) (The Director of FEMA "shall make flood insurance available....") (emphasis added).  See also 42 U.S.C. § 4001 (purpose of NFIP is to make flood insurance available on a nationwide basis).  Moreover, Congress directed FEMA not to make insurance available only in limited, specified circumstances.  See 42 U.S.C. § 4022 (community must participate and agree to abide by floodplain management criteria); Id. §§ 4028, 4029 (FEMA released from its obligation to make flood insurance available in a Coastal Barrier Resource System and the Colorado River Floodway.).  As set forth below, there is nothing in the directives to issue flood insurance and develop minimum criteria to suggest that Congress intended FEMA to consider wildlife when implementing the NFIP.  To the contrary, Congress has noted that the NFIP is a flood insurance program and not an environmental conservation statute.  AR 104 at 42-50.  Congress expressly deleted a proposed amendment to the purposes of the NFIP that arguably would have directed the agency to consider natural floodplain function before issuing flood premiums.  AR 104 at 2 (rejecting proposed language under H.R. 3191).

**a.      The Statutory Language of the NFIA Does Not Confer Discretion To FEMA To Consider Protected Species.**

The mandatory language of the NFIA requires FEMA to issue or underwrite flood insurance without regard to wildlife.  The Act provides that the Director may condition or withhold the issuance of flood insurance only if the community has not "given satisfactory assurance" that it has implemented "adequate land use measures" consistent with FEMA's minimum criteria.  Id.  This is the sole condition FEMA may place on communities before it must issue the policies to private parties.  Id.  Clearly, FEMA has no discretion with respect to the sale of flood insurance once it determines that a community has satisfied minimum eligibility criteria.

As to the criteria for determining eligibility for flood insurance, the minimum eligibility criteria are limited to the four factors specifically enumerated by Congress. 42 U.S.C. § 4102(c). FEMA may promulgate minimum land use criteria only to: (1) constrict development of land that is exposed to flood damage; (2) guide proposed construction away from flood hazard areas; (3) assist in reducing damage caused by flood; and (4) improve long-range land management of flood-prone areas. Id. at § 4102(c). The statutory language is completely devoid of any reference to wildlife, much less protected species.[5]/ Even Plaintiffs acknowledge that "FEMA's criteria are not designed or intended to protect aquatic habitat, imperiled species, or other environmental values." Pls.' Mem. at 6.

Similarly, FEMA's mapping function is exceedingly ministerial. FEMA must "identify and publish information with respect to all floodplain areas . . . within five years following August 1, 1968." 42 U.S.C. § 4101(a). Additionally, Congress directed FEMA to review and update these maps annually every five years. See id. § 4101(c)(1). Congress also authorized FEMA to correct and update these maps, if information was provided to the agency that the map was incorrect. "The Director shall revise and update any floodplain areas." Id. at § 4101(f); see also AR 3 (Applications and instructions for the Letter of Map Revisions ("LOMR") process). In accordance with this continuing obligation, FEMA periodically revises and updates FIRM's. The mapping activity is based solely on technical evaluation of the base flood elevation. If an area being evaluated is determined to be at or below the BFE, FEMA must designate that area as the SFHA. FEMA is simply drawing a topographic line around the floodplain. If an interested party presents FEMA with sufficient scientific and technical information showing that the subject property is no longer, or was inadvertently identified as being, at or below the BFE, FEMA must revise the FIRM through the LOMR process to correct the inaccuracy. Id. Even NMFS agrees that the LOMR process is not subject to Section 7 consultation. "Based on our review of section

---

[5]/ Plaintiffs attempt to characterize the minimum criteria as an ongoing agency action. This criteria, however, was developed and promulgated in 1976. Any challenge the Plaintiffs may mount to these regulations is barred by the applicable statute of limitations. See 28 U.S.C. § 2401(a) (general six-year statute of limitation against the government); Wind River Mining Corp. v. United States, 946 F.2d 710, 712 (9th Cir. 1991); Hawaii Green Party v. Clinton, 124 F.Supp.2d 1173, 1190 (D. Haw. 2000). Furthermore, the simple fact that FEMA has the authority to amend these regulations does not constitute an ongoing agency action.

7 of the [ESA], its implementing regulations (50 CFR 402), and agency policy, the technical map revisions you propose <u>would not constitute an action for the purposes of section 7 of the ESA</u>. Therefore, interagency consultation pursuant to section 7(a) of the ESA would not be required . . . .” AR 112 (emphasis added).  In sum, the language of the NFIA does not provide FEMA with the necessary discretion to implement the NFIP to inure to the benefit of chinook salmon. Rather, FEMA may only limit availability of flood insurance where a community has failed to satisfy the four minimum eligibility criteria enumerated by Congress.  42 U.S.C. § 4012(c).

### b.   **The Legislative History Further Confirms That FEMA Does Not Have Discretion To Consider Protected Species.**

If the language of the NFIA leaves any doubt, the underlying legislative history confirms that habitat and protected species are <u>not</u> to be considered when FEMA implements the NFIP.  In 1994, when the last amendments to the NFIP were being discussed, the original house bill contained the following proposed amendment to change the purpose behind the NFIP:

> SEC. 2. DECLARATION OF PURPOSE UNDER NATIONAL FLOOD INSURANCE ACT OF 1968.
>
> Section 1302(e) of the National Flood Insurance Act of 1968 (42 U.S.C. 4001(e)) is amended- . . .
>
> (2) by inserting after the comma at the end of clause (2) the following: " (3) <u>encourage State and local governments to protect natural and beneficial floodplain functions that reduce flood-related losses,</u>”.

140 Cong. Rec. H2951-02, 2951 (May 3, 1994) (emphasis added); AR 104 at 2.  In response to the proposed amendment and the effect it would have on FEMA’s obligations to implement the NFIP, many House Representatives voiced their concern that this broad language may be interpreted as an intent to authorize FEMA to consider environmental considerations before issuing flood insurance.[6]  <u>See</u> AR 104 at 42.  The Representatives also feared that this broad language would subject FEMA to litigation by environmental groups.  <u>See</u> <u>id.</u> at 42-49.[7]

---

[6]  In opposing the legislation, Representative Goss stated: “It [environmental language] is not in the original language in the 1968 bill.  Suddenly, we are creating something called ‘an environmental threshold,’ environmental standards and criteria that we are not quite sure where it leaves our local communities or FEMA with regard to opening up to litigation.”  AR 104 at 42.

[7]  Representative Kennedy, who was arguing in support of the proposed language, stated: “If we look at the notion that somehow we are going to be ridiculously encouraging environmentalists, the only language that is added says that we should encourage State and local governments to protect natural and beneficial flood plain functions that

When taken to a vote, the proposed amendment to the purposes of the NFIP was defeated. 42 U.S.C. § 4001(e) (reflecting the absence of such language).  Congress expressly deleted the "natural and beneficial floodplain function" language from the NFIA, further confirming its intent that the NFIP is not an environmental program.  It is merely a program to sell insurance and reduce flood disaster relief payments.  Congress did not grant FEMA the authority to consider environmental factors before implementing the NFIP.

### c.  The Community Ratings System

The only aspect of the NFIP under which FEMA may, arguably, have limited discretion to promote conservation measures that may affect wildlife is the CRS.  Under this program, Congress mandated FEMA to provide discounts on flood insurance premiums in communities that independently choose to establish additional floodplain management regulations that exceed FEMA's minimum criteria.  42 U.S.C. § 4022(b).  Participation by any community is completely voluntary.  FEMA cannot dictate the content of regulations adopted by a community, much less force their compliance.  Id.

Because the CRS is entirely voluntary, FEMA's actions to implement this program have no legal effect.  Implementation of any regulation that would affect the floodplain is contingent on third party actions.  As one Representative explained, the CRS is merely an incentive program, and FEMA cannot force compliance to regulate the floodplain:  "[O]nce FEMA has set the floor, which is going to be true regardless, there are going to be communities that do better. If they do better, their rates will be lowered.  It is only a carrot.  There is no stick involved."  AR 104 at 44.

Even Plaintiffs implicitly concede this point by acknowledging, "[p]articipation by a community in the NFIP is, technically, voluntary."  Pls.' Mem. at 6.  Although Plaintiffs may wish otherwise, this "technicality" has dispositive legal implications.  Because the CRS (and, to a

reduce flood-related losses."  AR 104 at 42.  Representative Goss responded: "my concern is that that is a reasonable interpretation, but I fear an attorney might have a different and equally reasonable interpretation that would have to be resolved in the court. . . ."  Id.  Representative Shaw later voiced his opposition to the proposed language: "Just one example is how this bill would modify the Flood Insurance Program by adding the purpose of encouraging State and local governments to protect natural and beneficial floodplain functions that reduce this flood-related losses. This may sound harmless.  However, listing this additional purpose is an open invitation for lawsuits blocking needed projects as simple as a seawall."  Id. at 49.

larger extent, the NFIP as a whole) is voluntary, FEMA cannot regulate development or take

action that would "inure to the benefit of the species."  The establishment and enforcement of

flood management regulations is reserved to the State and local governments, in accordance with

the Tenth Amendment of the Constitution.  Further, any Federal regulation within the floodplain

is left entirely in the hands of other federal agencies like the Army Corps of Engineers ("Corps")

(permitting dredge and fill activities under Section 404 of the Clean Water Act ("CWA")), the

Environmental Protection Agency ("EPA") (regulating the water quality under the CWA), and

the respective States and their underlying municipalities.  See, e.g. State of Washington Growth

Management Act and the Shoreline Management Act (requiring local communities to pass

conservation and protection measures to "protect habitat important for all stages of anadromous

fish . . . .", WAC 365-195-925, and "assure that flood hazard protection measures do not result in

a net loss of ecological function associated with rivers and streams."  WAC 173-26-

221(3)(B)(iv).  FEMA does not play a regulatory role through the CRS; therefore, there is no

ongoing discretionary agency action that triggers Section 7(a)(2) consultation.[8]/

   Regardless of whether the CRS or any other aspect of the NFIP, viewed in isolation, may

appear to have discretionary elements, the NFIP as a whole remains a nondiscretionary federal

action for purposes of the ESA.  As set forth below, under the law of this Circuit, the Court must

consider the statutory purposes of the NFIA and evaluate the scope of FEMA's discretionary

---

[8]/  Notably, FEMA's lack of regulatory authority in the floodplain is best demonstrated by the example provided by
Plaintiffs' so-called expert, Alan Wald.  See Joint Motion to Strike the Declarations of Alan Wald and Cleveland
Steward.  In his declaration, Mr. Wald attempts to leave the impression that the NFIP, with respect to the
Koll/Quadrant property in Bothell, Washington, somehow regulates or encourages development in the floodplain and
"can provide a green light for harmful activities . . ." Pls.' Mem. (Wald Decl. at ¶ 21).  Mr. Wald's characterization,
like most of his statements, does not accurately reflect FEMA's role under the NFIP.  The Koll/Quadrant project
placed approximately 61,000 cubic yards of fill in the wetlands adjacent to North Creek in Bothell, WA, to provide
an area for industrial and general commercial development that was safe from flooding.  See Brown Decl. Ex. 1
(Section 404(b) permit issued to The Koll Company).  This project was authorized by the Corps under Section 404(b)
of the CWA on April 6, 1984.  Id.  Prior to authorization, the Corps complied with the requisite environmental
statutes taking into account, among other species, chinook salmon.  Ex. 2 (Environmental Assessment and Finding of
No Significant Impact at 5, 7-8, addressing fish and wildlife habitat and finding that this area was not suitable for
salmon spawning and suitable mitigation measures could be taken); see also Ex. 3 (Letter from NOAA to the Corps
addressing mitigation measures for salmon, but agreeing with the project); Ex. 4 (Letter from FWS commenting on
the proposed project).  Importantly, FEMA never played a role in authorizing the fill or development in this area.  It
was only after the levee was constructed that issues involving flood insurance arose.  Like this example, almost every
development in the floodplain is regulated by the Corps or EPA, who will comply with the ESA before construction
ensues to ensure that development does not endanger protected species.  FEMA, however, does not have a regulatory
presence in this area, as demonstrated by Plaintiffs' own so-called expert.

DEF.'S CROSS-MOTION
FOR SUMMARY JUDGMENT (C-03-2824-Z)

United States Department of Justice
P.O. Box 7369
Washington, D.C. 20044-7369

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

authority under the NFIP as a whole.  FEMA lacks discretion to deny flood insurance or implement any measures that would ultimately limit the availability of flood insurance based on the presence or absence of endangered species in the floodplain.  Accordingly, the NFIP is not a discretionary federal action triggering consultation under the ESA.

### 2. FEMA's Authority Fits Squarely Within Ninth Circuit Precedent Concerning Non-discretionary Agency Actions Not Subject to Consultation.

FEMA's limited discretion under the NFIP is similar to the Bureau of Land Management's ("BLM's") authority in Sierra Club, 65 F.3d at 1509.  In this case, the court had occasion to apply the discretionary involvement standard set out in Section 402.03 of the regulations.  Plaintiffs claimed that BLM violated Section 7 by failing to consult with FWS prior to approving construction by a private timber company of a logging road crossing BLM-managed land under a reciprocal right-of-way agreement.[9]/

The Ninth Circuit upheld the agency's determination against the environmental group's challenge.  In reaching its conclusion, the court found that the consultation requirement applies only "to all actions in which there is discretionary Federal involvement or control."  Sierra Club v. Babbitt, 65 F.3d 1502, 1509 (9th Cir. 1995) (citing 50 C.F.R. § 402.03 (emphasis in original)). The court noted that when "the federal agency lacks the discretion to influence private action, consultation would be a meaningless exercise."  Id. (emphasis added).  BLM's inability to influence the right-of-way project beyond the three enumerated factors set the case apart from other cases where consultation was required.  Id.  Where (as in the instant case)  the agency "simply does not possess the ability to implement measures that inure to the benefit of the protected species," consultation under section 7(a)(2) is not required.  Id. (footnote omitted).

Subsequently, the Ninth Circuit reaffirmed this holding in Environmental Protection Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073 (9th Cir. 2001) ("EPIC").  In this case, the

---

[9]/  Before beginning construction of a new road, the company was required to seek BLM's approval.  Id. at 1505-06.  Approval could be withheld if one of three enumerated factors was met: (1) the proposed route was not the most direct; (2) the proposed road would interfere with existing or planned facilities; or (3) the proposed road would result in excessive soil erosion.  Id. at 1506.  Although a BLM biologist opined that the planned road "may affect" the spotted owl or its critical habitat, the agency determined it was not required to consult with FWS because BLM did not possess the discretion under the right-of-way agreement to influence construction of the road for the benefit of the spotted owl.  Id.

1
2
3
4
5
6
7
8
9
10
11

environmental organization argued that FWS violated Section 7 by failing to reinitiate consultation with itself regarding the impact of an incidental take statement for spotted owls issued in conjunction with a private timber company's habitat conservation plan on two other subsequently listed species.  Reviewing the analysis set out in <u>Sierra Club</u>, the Ninth Circuit stated that the plaintiff's complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) unless plaintiff "allege[d] facts to show that the FWS retained sufficient discretionary involvement or control over [the timber company's incidental take] permit 'to implement measures that inure to the benefit of the' [newly listed species]."  255 F.3d at 1080.  Upon reviewing the record, the court found that "nowhere in the various permit documents did the FWS retain discretionary control to make new requirements to protect species that subsequently might be listed as endangered or threatened." (footnote omitted) [10]/  <u>Id.</u> at 1081.

12
13
14
15
16
17
18
19
20

Similar to the agencies in <u>Sierra Club</u> and <u>EPIC</u>, FEMA's discretion to implement the NFIP is limited under the express statutory language in the NFIA.  Clearly, FEMA cannot alter the sale of flood insurance or its mapping function.  42 U.S.C. § 4011(a); 42 U.S.C. §4101.  Moreover, when establishing minimum criteria, FEMA must consider only the four factors enumerated in the statute, similar to the three factors BLM had to consider in <u>Sierra Club</u>.  Like BLM, FEMA may not set additional conditions on insurance premiums, nor may it develop minimum criteria that will "inure to the benefit of the species."  FEMA must sell flood insurance, it must map the floodplain, and it must establish minimum criteria without regard to wildlife.  Any additional condition would exceed FEMA's authority under the NFIA.

21
22
23
24
25
26

Most recently, in <u>Turtle Island Restoration Network v. National Marine Fisheries Service</u>, 340 F.3d 969 (9th Cir. 2003) ("<u>Turtle Island</u>"), the Ninth Circuit clarified that a reviewing court should consider the purposes of an enabling statute in determining whether an agency's actions under the statute trigger consultation.  In this case, plaintiffs challenged NMFS' issuance of fishing permits under the High Seas Fishing Compliance Act ("HSFCA"), 16 U.S.C. § 5501-

27
28

[10]/  Although the court in <u>EPIC</u> was interpreting section 402.16 of the regulations, which governs reinitiation of consultation, rather than section 402.03, which was at issue in <u>Sierra Club</u> and is at issue in the present case, the two provisions contain nearly identical limitations to actions that are subject to discretionary federal involvement or control.  <u>Compare</u> 50 C.F.R. § 402.03 <u>with</u> 50 C.F.R. § 402.16.

DEF.'S CROSS-MOTION
FOR SUMMARY JUDGMENT (C-03-2824-Z)

- 16 -

United States Department of Justice
P.O. Box 7369
Washington, D.C. 20044-7369

1
2
3
4
5
6
7

5509.  NMFS argued that it did not have discretion under the HSFCA to condition permits that would inure to the benefit of the protected sea turtles, therefore, the agency was not required to consult.  The district court agreed with NMFS' position and found that, although the agency had "some" discretion, the HSFCA did not provide the "Secretary [of Commerce] with the authority to place conditions on permits that inure to the benefit of protected species."  Id. at 975 (citing Center for Biological Diversity v. NMFS, No. C-01-1706-VRW, 2001 WL 1602707 *3 (N.D. Cal. Nov. 28, 2001)).

8
9
10
11
12
13
14
15
16
17
18
19

     The Ninth Circuit reaffirmed the longstanding principle that "where there is no agency discretion to act, the ESA does not apply."  Id. at 974 (citing Natural Resources Defense Council v. Houston, 146 F.3d 1118, 1125-26 (9th Cir. 1998).  The Ninth Circuit agreed with the district court that NMFS had some discretion under the statutory language, but reversed, finding that, because the HSFCA's purposes included protecting endangered and threatened sea turtles, NMFS had discretion to condition the permits that would inure to the benefit of the species.  Turtle Island, 340 F.3d at 977.  Critical to the court's determination was the overriding purpose behind the HSFCA.  In short, the court found that the purpose underlying the HSFCA was to protect endangered sea turtles.[11]/  See id.  In light of this express purpose, the Ninth Circuit found that Congress had conferred sufficient discretion on NMFS to implement the HSFCA in such a way that it would "inure to the benefit of the species."  Accordingly, NMFS' actions were subject to Section 7 and consultation was required.  Id. at 977.

20
21
22
23
24

     Unlike the purposes underlying the HSFCA, the NFIP was not created for species protection.  As discussed above, the express statutory purposes of the NFIA demonstrate that Congress created the NFIP to sell flood insurance and reduce disaster relief payments – nothing more.  42 U.S.C. § 4001(e).  Indeed, the legislative history further confirms that habitat and protected species are not to be considered when implementing this program.  AR 104 at 42-49.

25
26
27
28

[11]/  The HSFCA was passed to implement the multinational "Agreement to Promote Compliance with International Conservation and Management Measures by Fishing Vessels on the High Seas" ("Agreement").  The Agreement required "each party to 'take such measures as may be necessary to ensure that fishing vessels entitled to fly its flag do not engage in any activity that undermines the effectiveness of international conservation and management measures.'"  Id. at 973.  The HSFCA implemented the Agreement by conditioning fishing permits so that any vessel flying the U.S. flag would promote "the protection, conservation, and recovery of sea turtle populations and of the habitats on which they depend."  Id. at 976.

1
2
3
4

Thus, in addition to exceeding FEMA's authority under the NFIA, imposing additional conditions on the availability of flood insurance to benefit wildlife would also be contrary to the underlying purposes of the NFIA.  Under the law of this Circuit, FEMA's administration of the NFIP in the Puget Sound area is a nondiscretionary action that does not trigger ESA consultation.

5

### 3.   Key Deer is Inapposite.

6
7
8
9
10
11
12
13
14
15
16
17
18

Plaintiffs mistakenly argue that Florida Key Deer v. Stickney, 864 F. Supp. 1222 (S.D. Fla. 1994), is controlling in this case.  In Key Deer, the district court found that FEMA had discretion under the NFIA, because the agency could "issue such regulations as may be necessary to carry out the purposes of this Act."  Id. at 1239 (citing 42 U.S.C. § 4128(a) (emphasis added)).  The court's reliance on this statutory provision, however, was misplaced. However, the court's cursory analysis of FEMA's authority completely ignored the purposes underlying the NFIA.  Notably, the Key Deer court failed to consider that FEMA may only promulgate regulations consistent with purposes of the NFIA.  As the Ninth Circuit made clear in Turtle Island, the initial inquiry turns on the purposes behind the Act.  As discussed above, the purposes of the NFIA simply do not allow FEMA to consider environmental factors such as species protection when implementing the NFIP.  Under the law of this Circuit, no ESA consultation is required because FEMA lacks discretion to limit the availability of flood insurance based on the presence of endangered species in the floodplain.

19
20
21
22
23

Moreover, the court in Key Deer ignored basic principles of administrative law by affording FWS deference concerning its interpretation of the NFIA, a statute that FWS knows nothing about.  Id. at 1235-36.  To the extent that there may be any ambiguity as to the extent of FEMA's discretionary authority under the NFIA, the court should have adhered to the interpretation of FEMA, the sole agency charged by Congress to administer the Act.[12]/

24
25
26
27
28

---

[12]/  FEMA is owed deference despite the fact that its interpretation of its authorities under the NFIA is not derived through formal rulemaking.  E.g., Alaska Department of Environmental Conservation v. EPA, 124 S.Ct. 983, 1001 (2004) (quoting Washington State Dep't of Social and Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 (2003)) ("[A]dministrative interpretations. . . not [the] products of formal rulemaking . . . nevertheless warrant respect.").  This is especially true where, as here, the agency's interpretation of its authorizing legislation is one of "'longstanding' duration."  Barnhart v. Walton, 535 U.S. 212, 220 (2002) (quoting North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 522 n. 12 (1982)).  "[T]hat the Secretary's interpretation comes to us in the form of a legal brief * * * does not, in the circumstances of this case, make it unworthy of deference."  Auer v. Robbins, 519 U.S. 452, 462 (1997).

1
2
3
4

Accordingly, this Court should defer to FEMA's interpretation concerning the limited extent of its discretionary authority under the NFIA, as evidenced by its long-standing practice of not seeking ESA consultation with respect to its administration of the NFIP in the Puget Sound area.[13]/

5
6
7
8
9
10
11
12
13
14
15
16
17
18

**4.**     **The ESA Cannot Expand FEMA's Authority To Implement the NFIP.**

Plaintiffs are desperately searching for a cost-efficient method to limit development in the Puget Sound floodplain and have turned to the ESA as a means by which to achieve their objective. As a result, Plaintiffs request this Court to impose federal regulation through FEMA to protect chinook salmon in areas where the authority to regulate was left to other federal agencies, the State of Washington, and local communities. However, the ESA cannot be used to expand FEMA's authority under the NFIA. See Marbled Murrelet v. Babbitt, 111 F.3d 1447, 1449-50 (9th Cir. 1997) (State law vests California Department of Forestry and Fire Protection ("CDF") with sole authority to make a final determination as to whether proposed timber harvesting will result in a take of protected species, and, therefore, "CDF, not [FWS], has the discretion to influence the private action at issue."); Strahan v. Linnon, 967 F. Supp. 581 (D. Mass. 1997), aff'd 187 F.3d 623 (1st Cir. 1998) (Coast Guard's issuance of certificates of documentation to non-Coast Guard vessels was not discretionary, and thus, did not trigger ESA consultation requirement.)[14]/; Platte River Whooping Crane Critical Habitat Maintenance Trust v.

19
20
21
22
23
24
25
26
27
28

[13]/  Similarly, it was error for the court in Key Deer to rely on the Department of Interior Assistant Solicitor's Memorandum which concluded that FEMA had discretion under the NFIP. Id. at 1232; see also Pls.' Mem. at 18. Plaintiffs, following the same faulty logic in the Memorandum and Key Deer, urge this Court to consider the letter sent by NMFS to FEMA suggesting it should consult. Pls.' Mem. at 19 (citing AR 109). The NMFS letter, which Plaintiffs reference, is taken out of context in that it was a response to FEMA's request for consultation on the Disaster Relief Program. AR 109, 113. Additionally, this letter is refuted in a more recent letter from NMFS to FEMA clearly stating that FEMA is not required to consult on the LOMR process. "Based on our review of section 7 of the [ESA], its implementing regulations (50 CFR 402), and agency policy, the technical map revisions you propose would not constitute an action for the purposes of section 7 of the ESA. . . ." AR 112 (emphasis added).

[14]/  In Linnon, the district court concluded that the Coast Guard was not required to initiate Section 7 consultation with NMFS regarding its non-discretionary issuance of Certificates of Documentation and Inspection ("Certificates"). Plaintiff argued that consultation was required because private vessels which were prohibited by law from operating within the United States exclusive economic zone ("EEZ") unless they held such Certificates had caused take of endangered right whales through ship strikes and other interaction. The court disagreed, finding that the Coast Guard is required to issue Certificates based on specific statutory and regulatory criteria. Linnon, 967 F. Supp. at 621-22. As such, issuance of Certificates was non-discretionary and consultation was not required. Id.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FERC, 962 F.2d 27, 34 (D.C. Cir. 1992) (Section 7 of the ESA did not empower FERC to alter an existing license agreement for the protection of species listed under the ESA after the issuance of the license.).  Any attempt to force FEMA into a regulatory role through Section 7 consultation is impermissible.

 In an analogous case, American Forest & Paper Ass'n v. EPA, 137 F.3d 291, 299 (5th Cir. 1998); ("American Forest & Paper"), plaintiffs challenged EPA's authority under Section 402(b) of the CWA to condition discharge permits on state compliance with Section 7(a)(2) of the ESA.[15]/ 137 F.3d at 296.  The Fifth Circuit found that Congress did not confer authority to EPA under this provision to consider protected species.  Id. at 298 ("There is no hint that Congress intended to grant EPA authority to erect additional hurdles to the permitting process beyond those expressly noted in § 402(b).  Moreover, neither section even mentions endangered species or the ESA."); compare American Iron & Steel Inst. v. EPA, 115 F.3d 979, 992 (D.C. Cir. 1997) (Statutory language "to protect human health, aquatic life and wildlife . . ." conferred sufficient authority to EPA to consider endangered species.).  The court ultimately held that EPA's authority under CWA § 402(b) was ministerial, and Section 7(a)(2) of the ESA could not expand its authority.  "[T]he ESA serves not as a font of new authority, but as something far more modest: a directive to agencies to channel their existing authority in a particular direction.  The upshot is that EPA cannot invoke the ESA as a means of creating and imposing requirements that are not authorized by the CWA."  American Forest & Paper, 137 F.3d at 299 (emphasis in original); see also Platte River Whooping Crane, 962 F.2d at 34 (The ESA "does not expand the powers conferred on an agency by its enabling act," but rather directs the agencies to "utilize" their existing powers to protect endangered species.).

 Here, as in American Forest & Paper, Plaintiffs are trying to expand FEMA's authority using the ESA.  However, as detailed above, the statutory language under the NFIA, like CWA §

_____

[15]/  Plaintiffs argue that under CWA § 402(b), EPA must perform the ministerial duty of approving a state pollution program, and thus relinquish control of the discharge permits without ESA compliance, if the state complied with all the statutory conditions.  In other words, plaintiffs argued that EPA did not have authority to create conditions on the permits that would be beneficial to protected species under the CWA.  Id. at 294.  "The key question is whether EPA may deny a state's proposed program based on a criterion – the protection of endangered species – that is not enumerated in § 402(b)."  Id. at 297.

United States Department of Justice
P.O. Box 7369
Washington, D.C. 20044-7369

402(b), is ministerial.  If communities pass ordinances regulating the floodplain, FEMA must issue flood insurance. 42 U.S.C. § 4012(c); see also 44 C.F.R. Part 62.  FEMA does not have discretion to condition the sale of flood insurance because the NFIA neither mentions, nor alludes to, protected species.[16]/  AR 104.

In contrast to the various aspects of the NFIP, in which FEMA lacks discretion to undertake measures that will "inure to the benefit of protected species," Sierra Club v. Babbitt, 65 F.34d at 1509, FEMA has acknowledged that its Disaster Relief Program, which is implemented under the Stafford Act, 42 U.S.C. § 5121 et seq., and not the NFIA, is an agency action subject to Section 7, because FEMA has discretion in how it responds to each disaster. See 42 U.S.C. § 5121 et seq.  Accordingly, FEMA has sought NMFS' involvement with respect to this program.  AR 108.  Additionally, FEMA has developed a Model Ordinance for Flood Loss Reduction and Habitat Enhancement, which fulfills its requirements under Section 7(a)(1). AR 67.  Here again, FEMA has reviewed the extent of its general authority and has determined that it may provide guidance to communities that ultimately must comply with Section 9 of the ESA and, in theory, may reward those communities through the CRS program.  The Model Ordinance, however, is not an action that triggers consultation.  It is merely a proposed ordinance suggesting how a community may implement regulations to promote responsible development of the floodplain habitat.  AR 67.  In other words, the Model Ordinance is only FEMA's suggestion to communities based on its institutional knowledge.  Communities may adopt or not adopt the Model Ordinance, but FEMA has no legal authority to act in a regulatory role.  Moreover, the overriding purpose of the Model Ordinance is to alert communities that their actions – not FEMA's – may violate the "take" prohibition of Section 9 of the ESA.[17]/  AR 67.

---

[16]/  Plaintiffs argue that 44 C.F.R. § 10.4(a) and other related regulations confer discretion to consider protected species.  Pls.' Mem. at 10.  In making this argument they have mis-quoted the relevant provision:  It is not "environmental priorities" but rather "policies."  Moreover, this regulation and those with similar language merely reflect that FEMA will comply with those aspects of the ESA where it has authority to do so.  Contrary to Plaintiffs' contentions, it must be the statute that confers discretion, not FEMA's own regulations.  As detailed above, the NFIA itself does not confer such discretion.

[17]/  Plaintiffs contend that FEMA's efforts toward ESA Section 7(a)(1) compliance (development of the Model Ordinance) and the Defendants' position concerning lack of discretion for purposes of ESA Section 7(a)(2) consultation, cannot be reconciled.  See Pls.' Mem. at 21.  Plaintiffs' argument ignores both the statutory structure of the ESA and the underlying requirements for each provision.  Under Section 7(a)(1), FEMA must exercise its general

In sum, Plaintiffs' position should be seen for what it is – an impermissible attempt to use the ESA to spread additional federal regulation into an area that Congress has expressly exempted. FEMA has never possessed the authority to consider protected species under the NFIP, and the ESA cannot supplant Congress' clear intent. Because FEMA's administration of the NFIP in the Puget Sound area is a nondiscretionary action for purposes of the ESA regulations, 50 C.F.R. § 402.03, no Section 7 consultation is required.

**C.     Plaintiffs Fail To Demonstrate That The NFIP "May Affect" Chinook Salmon.**

Even if the Court determined that FEMA's administration of the NFIP in the Puget Sound area constitutes a discretionary action within the meaning of the ESA, Defendant notes that FEMA would not be obligated to consult with NMFS because there is no effect on listed species. No ESA consultation is necessary where an agency undertakes an action that will have "no effect" on an endangered or threatened species. Southwest Ctr. for Biological Diversity v. United States Forest Service, 100 F.3d 1443, 1447-48 (9th Cir. 1996); (Pacific Rivers Council v. Thomas, 30 F.3d 1050, 1054 n. 8; 50 C.F.R. § 402.14(a). Here, because of the remoteness of the administration of the NFIP with respect to any effects on listed species, FEMA has not had reason to believe that the NFIP may affect the Puget Sound chinook salmon.

Plaintiffs argue that, because development in the floodplain "may affect" salmon, FEMA is required to consult. Like Plaintiffs' whole case, this contention mis-characterizes the proper analysis under Section 7. The proper analysis is not whether development affects salmon, but rather, whether the federal agency action at issue (i.e., the NFIP) "may affect" Puget Sound chinook salmon.

Prior to an agency requesting consultation with the FWS, it should have "reason to

---

authority to benefit species. See 16 U.S.C. § 1536 (a)(1) (requiring agencies to "utilize their authorities . . .") (emphasis added). However, under Section (a)(2), the duty to consult is not triggered until there is a discretionary action under a specific provision of the act where the agency has authority to benefit protected species. 50 C.F.R. § 402.03; Turtle Island, 340 F.3d at 974. These are two completely separate legal obligations. Even Plaintiffs have acknowledged this distinction. See Pls.' Mem. at 21 ("§ 7(a)(1) and § 7(a)(2) are separate legal obligations with which agencies must comply") (citing Sierra Club v. Glickman, 156 F.3d 606, 616 (5th Cir. 1998)). An agency can exercise its inherent authority and utilize its expert knowledge to provide the public with guidance on how their actions may be improved without triggering the consultation requirement. This distinction is crucial, otherwise every agency would perpetually violate Section 7(a)(1), or have to consult with NMFS or FWS on every action contrary to Section 402.03. Certainly, Congress did not envision such a scenario when it enacted Section 7 of the ESA.

believe that the prospective action may affect a listed species or critical habitat." 50 C.F.R. §
402.11(b).  The required scope of analysis for assessing the effects of an action is defined in joint
regulations promulgated by FWS and NMFS in 1986.  51 Fed. Reg. 19,926, 19,932 (June 3,
1986); 50 C.F.R. § 402.  As prescribed by the joint regulations, an action agency is required to
consider "the effects of the action as a whole."  50 C.F.R. 402.14.  "Effects of the action" include
both the direct and indirect effects of the action.  "Indirect effects" are defined as "those that are
caused by the proposed action and are later in time, but still are reasonably certain to occur."  50
C.F.R. § 402.02.

Thus, to trigger the need for consultation, a discretionary federal action must cause direct
or indirect effects that are so closely related to the action such that it is reasonable to believe that
they may affect the listed species or its federally designated critical habitat.  For example, in
National Wildlife Fed'n v. Coleman, 529 F.2d 359 (5th Cir. 1976), the court found that there was
a sufficiently close link between construction of a highway and associated private development
to necessitate consultation.  The highway at issue in that case was 90 percent federally funded,
id. at 362, and the Department of Transportation controlled the placement of the highway and
interchanges, id. at 374.  Under the circumstances, removal of the federal funding would
effectively have eliminated the highway and the access to the area by private developers.

Here, by contrast, any indirect effects of the NFIP on listed species are so attenuated that
they are not reasonably certain to occur, and no ESA consultation is required.  Even if flood
insurance under the NFIP was not offered in the Puget Sound area, development would
nevertheless proceed.  There is a myriad of other intervening and potentially more significant
factors that affect an individual property owner's decision to develop their property.

Moreover, even if the NFIP was enjoined around Puget Sound, no federal law prohibits
construction without flood insurance.  Building permits are granted by local, rather than federal,
officials, so construction could still occur regardless of whether flood insurance is available.
Plaintiffs have failed to demonstrate that the alleged indirect effects of FEMA's administration of

the NFIP in the Puget Sound area are "reasonably certain to occur,"[18]/ and consultation is unnecessary as a matter of law.

Although Plaintiffs fail to demonstrate that FEMA's actions "may affect" listed species, it is unnecessary for the Court to determine the extent of any hypothetical effects within these proceedings.  If the Court determines that FEMA's administration of the NFIA in the Puget Sound area is a discretionary action that may affect the Puget Sound chinook salmon such that ESA consultation is triggered, the proper remedy would be to remand this matter so that FEMA may further assess any hypothetical effects on listed species through the consultation process. The ESA regulations contemplate that an action agency must have the discretion to determine the scope of any effects of its actions in consultation with NMFS.  See 50 C.F.R. § 402.12(f) (contents of biological assessment produced by action agency include an analysis of the effects of the action on the species and habitat); Id. § 402.14(g) (NMFS responsibilities in rendering biological opinion include evaluating the effects of the action on listed species and critical habitat).

## V.  CONCLUSION

Plaintiffs seek to compel FEMA to deny or limit flood insurance coverage for ESA purposes, even if a participating community has met all the applicable minimum eligibility criteria under the NFIA.  However, the NFIA does not allow such a result, and if FEMA did as Plaintiffs proffer, it would run afoul of Congress' mandates under the NFIA.  Under established law, this result must be rejected.  E.g., American Forest & Paper, 137 F.3d at 299.  For the above-stated reasons, the Secretary respectfully requests that Plaintiffs' Motion for Summary Judgment be denied.  The Secretary further requests the Court to enter Summary Judgment in favor of the Secretary on all claims, with the parties bearing their own fees and costs, as set forth in the attached Proposed Order.

---

[18]/  Plaintiffs' only explanation regarding this crucial component is a 1984 Solicitor Opinion stating that "development in flood plains would probably not take place [absent the NFIP]," Key Deer, 864 F. Supp. at 1232, and the letter from NMFS to FEMA regarding the disaster relief program.  AR 109, 113.  These vague references to documents that were not specific to the Puget Sound area do not "unquestionably" establish that the NFIP "may affect" chinook salmon in the Puget Sound area.  See Pls.' Mem. at 19.  Furthermore, the fact that the court in Key Deer, after hearing testimony from experts, found that the NFIP encouraged development in Monroe County, Florida, does not mean the same holds true for the Puget Sound area.

United States Department of Justice
P.O. Box 7369
Washington, D.C. 20044-7369

Dated this ___ day of _____, 2004.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

JOHN McKAY
United States Attorney
BRIAN C. KIPNIS
United States Attorney's Office
601 Union Street, Suite 5100
Seattle, WA 98101-3903
(206) 553-7970
(206) 553-0116 (fax)
brian.kipnis@usdoj.gov

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources
JEAN WILLIAMS, Section Chief
MARK A. BROWN, Senior Trial Attorney
Wildlife and Marine Resources Section

_____/s/_____
CARTER HOWELL, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7369
Washington, DC 20044-7369
(202) 305-0201
(202) 305-0275 (fax)
coby.howell@usdoj.gov

Attorneys for Defendant

Of Counsel:
BARBARA MONTOYA
Trial Attorney
Federal Emergency Management Agency
Washington, DC

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing and the accompanying "Declaration of Mark A. Brown" were served, this 25th day of March, 2004, via email and first class mail, on the following counsel of record:

JAN ERIK HASSELMAN
National Wildlife Federation
418 First Avenue West
Seattle, WA 98119
(206) 285-8707
(206) 285-8698 (Fax)

JOHN F. KOSTYACK
MARY RANDOLPH SARGENT
National Wildlife Federation
1400 16th St., N.W., Suite 501
Washington, D.C. 20036
(202) 797-6879
(202) 797-6646 (Fax)

GALEN SCHULER
Perkins Coie, LLP
1201 Third Avenue, Suite 4800
Seattle, washington 98101-3099
(206) 359-8000
(206) 359-9000

_____
/s/
MARK A. BROWN