THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY,<br><br>Defendant,<br><br>And<br><br>NATIONAL ASSOCIATION OF HOME BUILDERS, ET AL.,<br><br>Intervenor-Defendants. | NO. CV03-2824Z<br><br>INTERVENOR DEFENDANT NAHB ET AL.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE<br><br>NOTE ON MOTION CALENDAR: APRIL 23, 2004 |



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

## CONTENTS

I. INTRODUCTION ..... 1

II. STANDARD OF REVIEW ..... 3

III. BACKGROUND ..... 4

A. The NFIP Discourages Development in Floodplains. ..... 4

B. FEMA Administers the NFIP Through Ministerial Actions. ..... 5

C. FEMA Does Not Authorize Development Affecting Salmon. ..... 6

1. Floodplain development is regulated and authorized by the State of Washington and its communities. ..... 7

2. Congress has granted regulatory authority over water quality, fish, wildlife, and habitat to agencies other than FEMA. ..... 9

IV. ARGUMENT ..... 11

A. NWF Has Not Met Its Burden of Establishing Standing or the Elements of a Duty to Consult. ..... 11

1. NWF provides no evidence of specific action by FEMA that may affect NWF's interest in Puget Sound chinook salmon. ..... 12

2. The NFIP is a program—not an "agency action." ..... 15

3. Allegations of potential programmatic influence are not facts showing injury and causation. ..... 17

a. The Declaration of Cleveland R. Steward III ..... 20

b. The Declaration of Alan R. Wald. ..... 22

B. FEMA Does Not Have Discretion for Purposes of Consultation or Redress. ..... 29

1. FEMA's duty to consult is limited by the scope of agency discretion. ..... 30



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

2. NWF fails to identify discretion within the NFIP that may inure to the benefit of chinook salmon. ............................................32

C. Authority to Engage in Rulemaking is Not "Ongoing Agency Action.".........34

V. CONCLUSION.........................................................................................36



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

# TABLE OF AUTHORITIES

## Cases


American Forest & Paper Ass'n v. U.S. E.P.A., 137 F.3d 291 (5th Cir. 1998) ..................... 32

Babbitt v. Sweet Home Chapt., Communities for a Great Oregon, 515 U.S. 687 (1995) ..................... 10

Baker v. Tri-Mountain Resources, Inc., 1998 WASH. APP. LEXIS 1031 (Wa. Ct. App. 1998) ..................... 27

Behm v. Cooney, 1995 WA TAX LEXIS 314 (Wa. Bd. Tax Appeals 1995) ..................... 25

Bell v. Bonneville Power Admin., 340 F.3d 945 (9th Cir. 2003) ..................... 19

California Power Exchange Corp. v. Federal Energy Regulatory Comm'n, 245 F.3d 1110 (9th Cir. 2001) ..................... 36

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..................... 3

Citizens for Sensible Growth v. City of Leavenworth, 1998 WA ENV LEXIS 125 (Wa. Shoreline Hearings Board 1998) ..................... 26

Clausen v. M/V New Carissa, 339 F.3d 1049 (9th Cir. 2003) ..................... 22, 24

County of Okanogan v. Nat'l Marine Fisheries Serv., 347 F.3d 1081 (9th Cir. 2003) ..................... 32

Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995) ... 20, 21, 22, 24

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) ..................... 20, 22

Defenders of Wildlife v. Norton, 257 F. Supp. 2d 53 (D.D.C. 2003) ..................... 32

Environmental Prot. Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073 (9th Cir. 2001) ..................... 30, 31

Ferndale Town Center LLC v. Dep't of Ecology, 2003 WA ENV LEXIS 60 (Wa. Pollution Control Hearings Board 2003) ..................... 10

Florida Key Deer v. Stickney, 864 F. Supp. 1222 (S.D. Fla. 1994) ..................... 17, 18




**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Greenpeace v. Nat'l. Marine Fisheries Serv., 80 F. Supp. 2d 1137 (W.D. Wash. 2000) ........ 32

Independence Mining Co. v. Babbitt, 105 F.3d 502 (9th Cir. 1997) ........ 35, 36

Japan Whaling Ass'n v. American Cetacean Soc'y, 478 U.S. 221 (1986) ........ 35

KIN Partnership v. Noble, 2003 WASH TAX LEXIS 28 (Wa. Bd. Tax Appeals 2003) ........ 25

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ........ passim

Lujan v. National Wildlife Federation, 497 U.S. 871 (1990) ........ passim

Maple Leaf Investors, Inc. v. Department of Ecology, 88 Wn.2d 726, 565 P.2d 1162 (1977) ........ 8

Natural Resources Defense Council v. Houston, 146 F.3d 1118 (9th Cir. 1998) ........ 30, 31

ONRC Action v. B.L.M., 150 F.3d 1132 (9th Cir. 1998) ........ 35

Pacific Coast Federation of Fishermen's Ass'ns v. Bureau of Reclamation, 138 F. Supp. 2d 1228 (N.D. Cal. 2001) ........ 32

Pacific Rivers v. Thomas, 30 F.3d 1050 (9th Cir. 1994) ........ 30, 31

Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC, 962 F.2d 27 (D.C. Cir. 1992) ........ 32

Powers v. Skagit County, 67 Wn. App. 180, 835 P.2d 230 (1992) ........ 8

Rains v. Dept. of Fisheries, 89 Wn.2d 740, 575 P.2d 1057 (1978) ........ 8

Robertson v. Methow Valley Citizens Council, 490 U.S. 332 (1989) ........ 33

Sierra Club v. Babbitt, 65 F.3d 1502 (9th Cir. 1995) ........ 30

State of Hawaii v. FEMA, 294 F.3d 1152 (9th Cir. 2002) ........ 18

Washington Toxics Coalition v. E.P.A., No. C01-132C, Order (W.D. Wash, July 2, 2002) ........ passim



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

White v. Ford Motor Co., 312 F.3d 998 (9th Cir. 2002) .................................................... 25

**Statutes**

5 U.S.C. § 553(e) .................................................................................................. 35

5 U.S.C. § 706(1) .................................................................................................. 35

16 U.S.C. § 1533(d) .................................................................................................. 9

16 U.S.C. § 1536(a)(2) .................................................................................. 10, 11

16 U.S.C. § 1536(a)(3) .......................................................................................... 11

16 U.S.C. § 1538(a)(1)(B) ....................................................................................... 9

33 U.S.C. § 1251 ....................................................................................................... 9

33 U.S.C. § 1344 ....................................................................................................... 9

33 U.S.C. § 1362(7) ................................................................................................ 10

42 U.S.C. § 4001 ................................................................................ 5, 26, 32, 34

42 U.S.C. § 4002 ................................................................................ 5, 26, 32, 34

42 U.S.C. § 4011(a) .................................................................................................. 6

42 U.S.C. § 4012(c) .................................................................................................. 6

42 U.S.C. § 4022(a) .................................................................................................. 4

42 U.S.C. § 4022(a)(1) ............................................................................................. 6

42 U.S.C. § 4022(b) .................................................................................................. 5

42 U.S.C. § 4024 ............................................................................................. 33, 34

42 U.S.C. § 4102(c) .................................................................................................. 4

42 U.S.C. § 4128(a) ............................................................................................ 4, 34

42 U.S.C. § 4321 ..................................................................................................... 33



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

RCW 36.70A.030(5)............................................................ 7

RCW 36.70A.060(2)............................................................ 7

RCW 43.21C............................................................ 8

RCW 77.55.100 ............................................................ 8

RCW 86.16.020 ............................................................ 8

RCW 86.16.025 ............................................................ 8

RCW 86.16.041 ............................................................ 8

RCW 90.48 ............................................................ 9

RCW 90.58.020 ............................................................ 7

RCW 90.58.030(2)(f)............................................................ 7

**Other Authorities**

44 C.F.R. § 9.2............................................................ 33

44 C.F.R. § 9.5(f)(2)(i)-(v) ............................................................ 33

44 C.F.R. § 9.6............................................................ 33

44 C.F.R. § 59.1............................................................ 5, 6

44 C.F.R. Part 9 ............................................................ 33

44 C.F.R. Part 10 ............................................................ 33

44 C.F.R. Part 59 ............................................................ 4, 6

44 C.F.R. Part 60 ............................................................ 4, 6

44 C.F.R. Part 62 ............................................................ 6, 31

44 C.F.R. Part 65 ............................................................ 6

50 C.F.R. § 402.03............................................................ 30



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Fed. R. Civ. P. 56(c) .......... 3

Fed. R. Civ. P. 56(e) .......... 4

Fed. R. of Evid. 702 .......... 20

WAC 173-26-201(2)(c) .......... 8

WAC 173-26-201(3)(d)(i)(C) .......... 8

WAC 173-26-221(3)(b)(iv) .......... 8

WAC 173-201A-200 .......... 9

WAC 197-11-660 .......... 9

WAC 365-190-080(3) .......... 7

WAC 365-195-825(2)(b) .......... 7

WAC 365-195-925 .......... 7

**Regulations**

1973 U.S.C.C.A.N. 3220, Senate Report No. 93-583 on P.L. 93-234 .......... 5

Executive Order 11988 (May 24, 1977) .......... 33



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

## I. INTRODUCTION

Intervenor-Defendants, the National Association of Homebuilders, Skagit County, Island County, Mason County, the Kitsap County Home Builders Association, Skagit Island Counties Builders Association, Piazza Construction, Inc., and the Washington Association of REALTORS® (collectively "NAHB, et al.") respectfully request that the Court strike the Declarations of Cleveland R. Steward III and Alan R. Wald and grant summary judgment in favor of defendants.

This lawsuit should be dismissed because the plaintiffs, the National Wildlife Federation and Public Employees for Environmental Responsibility ("NWF"), have not met their burden to establish standing sufficient to invoke the jurisdiction of the federal courts.

According to NWF, their claim requires proof of three material facts: (1) a federal agency action by the defendant, Federal Emergency Management Agency ("FEMA"), that (2) may affect Puget Sound chinook salmon, and (3) the absence of any consultation by FEMA under Section 7 of the Endangered Species Act ("ESA"). Pl.s' Mot. for Summ. J. ("NWF Brief") at 16. The first two facts are not only essential to the merits of NWF's claim, but are also necessary to demonstrate concrete injury and causation sufficient for standing. These "facts" are not only disputed—they are entirely absent from the record before this Court. In its declarations and responses to interrogatories, NWF has provided absolutely no evidence of a single action by FEMA that may affect Puget Sound chinook salmon and injure NWF's interests. Under controlling Supreme Court precedent for standing and summary judgment, NWF's claim must be dismissed or summary judgment should be granted in favor of the defendants.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

NWF insists that "implementation of the National Flood Insurance Program" ("NFIP") created by Congress in 1968 "is an agency action" that may affect chinook salmon. NWF Brief at 16-17. The existence of the NFIP is a congressional action—not an agency action. NWF provides absolutely no evidence of a specific discretionary action by FEMA that causes or is traceable to an effect on or an injury to NWF's interest in salmon. This is precisely the sort of vague and speculative allegation of undifferentiated programmatic action and generalized injury that the Supreme Court has found to be nonjusticiable. Lujan v. Defenders of Wildlife, 504 U.S. 555, 568 (1992) ("suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations . . . [are], even when premised on allegations of several instances of violations of law, . . . rarely if ever appropriate for federal-court adjudication.") (internal citations omitted); Lujan v. National Wildlife Federation, 497 U.S. 871, 894 (1990) ("The case-by-case approach that this requires is understandably frustrating to an organization such as respondent, which has as its objective across-the-board protection of our Nation's wildlife and the streams and forests that support it. But this is the traditional, and remains the normal, mode of operation of the courts.").

To sustain a citizen suit for court-ordered consultation under the ESA, NWF must go beyond mere allegations that a federal program may affect a listed species in some unspecified manner. It must provide evidence of specific agency actions that may affect a listed species. This truth is confirmed in a decision of this Court that is relied on by NWF. See Washington Toxics Coalition v. E.P.A., No. C01-132C, Order, at 8 (W.D. Wash., July 2, 2002) ("The Court agrees with EPA that EPA's entire universe of pesticide registrations is not a single agency action."), Decl. J. Hasselman, Ex. 10. Because ESA section 7(a)(2) has an agency action requirement, plaintiffs must demonstrate standing separately for each



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

action in a program that may affect ESA-listed salmon. Id. at 13-14 (dismissing claims for ESA consultation on 898 of 953 pesticide registrations by EPA where plaintiffs offered no evidence that the registrations may affect listed salmon). NWF has refused to provide any such evidence in this case.

NWF's own admissions are fatal to its standing and its claims in this matter. When asked to "identify the federal action or federal actions taken by the Federal Emergency Management Agency within the range of the Puget Sound chinook salmon that you contend are subject to the consultation requirements of Section 7(a)(2) of the Endangered Species Act," NWF responded:

> Plaintiffs have not claimed to have broken FEMA's implementation of the NFIP into separate parts and identified particular impacts associated with each activity.

Pl.'s Resp. to Interrogs. at 20 (filed separately in support of this motion). NWF cannot establish standing or a duty to consult based on the mere fact that a federal program exists and is implemented within the range of any ESA-listed species. NWF must identify the discretionary agency action(s) within the program that, as a matter of fact, may affect a listed species and therefore require consultation. Because NWF has failed to do so, it has not established standing or proven its claim.

## II. STANDARD OF REVIEW

A party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); National Wildlife Federation, 497 U.S. at 884. "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of any element essential to that party's case." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

As the party invoking federal jurisdiction, NWF bears the burden of establishing the elements of standing. Defenders of Wildlife, 504 U.S. at 561. To meet that burden "[i]n response to a summary judgment motion, . . . the plaintiff can no longer rest on [] 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" Id. (citing Fed. R. Civ. P. 56(e)). If NWF fails to satisfy this threshold burden, "[r]ule 56 does not require the moving party to *negate* the elements of the nonmoving party's case." National Wildlife Federation, 497 U.S. at 885.

## III. BACKGROUND

NWF has not established the basic elements of standing necessary for federal court jurisdiction. Accordingly, defendants FEMA and NAHB do not have the burden of negating NWF's generalized allegations that implementation of the NFIP may affect salmon. Nonetheless, a closer look at FEMA's implementation of the NFIP helps to show why NWF is unable to prove its claim or provide evidence of injuries traceable to or redressable through actions by FEMA. Contrary to NWF's unsubstantiated allegations, FEMA does not authorize development affecting Puget Sound chinook salmon and FEMA does not have authority to regulate development for the benefit of chinook salmon.

### A. The NFIP Discourages Development in Floodplains.

The NFIP limits the availability of flood insurance to eligible communities that have adopted land use measures that are consistent with minimum criteria established by FEMA. 42 U.S.C. §§ 4022(a), 4102(c). FEMA has adopted regulations that establish minimum land use criteria that require communities that enroll in the NFIP to restrict development in the flood-hazard areas. 44 C.F.R. Parts 59 and 60. Under the National Flood Insurance Act ("NFIA"), FEMA may only promulgate rules "necessary to carry out the purpose of this Act." 42 U.S.C. § 4128(a). Consistent with those purposes, FEMA has promulgated



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

minimum criteria that require State and local land use measures that "constrict" the development of land exposed to flood damage, guide development away from flood hazards, and assist in reducing and avoiding flood damage. 42 U.S.C. §§ 4001(e)(1), (2); 4002(b)(3); accord NWF Brief at 5. As NWF correctly notes, the community eligibility regulations do not include fish and wildlife protection criteria. Id. 6. That is because the NFIA does not include fish and wildlife protection among the purposes and authorities of the NFIP. See 42 U.S.C. §§ 4001, 4002.

The NFIA was amended in 1994 to promote a voluntary, incentive-based program called the Community Rating System ("CRS"). 42 U.S.C. § 4022(b) note (USCS Supp. 2003). Through insurance discounts, CRS encourages communities to undertake floodplain management measures that go beyond the minimum land use criteria for NFIP eligibility. Id. CRS rewards communities for measures such as voluntary conservation of ESA-listed species under a federally approved habitat conservation plan. Administrative Record ["AR"] 114, at 420-9, 430-12. Participation in the CRS is not mandatory for or determinative of NFIP eligibility. 42 U.S.C. § 4022(b).

**B. FEMA Administers the NFIP Through Ministerial Actions.**

FEMA implements the NFIP through three basic categories of ministerial action. First, FEMA designates "Special Flood Hazard Areas" ("SFHA"s), which are defined as the 100-year floodplain. 44 C.F.R. § 59.1.[1] The 100-year floodplain is an area that is at or below a "base flood elevation" ("BFE") within which a given area has a greater than one

---

[1] When the NFIA was amended in 1973, Congress clearly accepted the 100-year flood-hazard area as the foundation for administration of the NFIP. 1973 U.S.C.C.A.N. 3220-3223, Senate Report No. 93-583 on P.L. 93-234 ("After careful consideration, the Committee agreed that the 100-year standard of the flood that has a one percent annual chance of occurrence is reasonable and consistent with Nationwide standards for flood protection.").



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

percent chance of being flooded in any given year. Id. SFHAs are shown on Flood Insurance Rate Maps ("FIRMS") published by FEMA. SFHA designations and FIRMS may be periodically updated and amended based on factual data concerning the proper location of the BFE. 44 C.F.R. Part 65. FEMA does not have discretion to designate or amend SFHAs and FIRMS based on factors other than the physical location of the 100-year floodplain.

Second, FEMA enrolls communities in the NFIP when they satisfy the minimum eligibility requirements set forth in federal regulations. 44 C.F.R. Parts 59 and 60. To be eligible, a community must demonstrate that it regulates land use in the SFHA by (1) requiring permits for development; (2) prohibiting development in floodways that would obstruct the discharge of floodwater and therefore raise BFE; (3) prohibiting residential development below BFE; and (4) requiring floodproofing construction methods for non-residential development below BFE. AR 106, p. 8.

Third, Congress mandates that FEMA make flood insurance available for development in an NFIP eligible community. 42 U.S.C. §§ 4011(a), 4012(c), 4022(a)(1). FEMA's regulations and authorities do not provide for the conditioning of insurance on discretionary consideration for habitat and species protection. Id. § 4012(c); 44 C.F.R. Part 62. However, any development insured by FEMA must necessarily have already been reviewed by other federal, state, and local agencies with authority to protect habitat for ESA-listed species and other natural resources.

**C. FEMA Does Not Authorize Development Affecting Salmon.**

When implementing the NFIP, FEMA does not authorize, permit, or engage in development. The NFIP provides insurance for property that has been developed with permission from federal, state, and local agencies other than FEMA. In Washington State,



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

that permission must be gained under a regulatory framework that is far more comprehensive and demanding than the minimum criteria for NFIP eligibility.

**1. Floodplain development is regulated and authorized by the State of Washington and its communities.**

Under Washington law, state and local agencies authorize development under several laws before any project may be insured under the NFIP.

Under Washington's Growth Management Act ("GMA"), "each county and city shall adopt development regulations that protect critical areas." RCW 36.70A.060(2). Critical areas include "fish and wildlife habitat conservation areas" and "frequently flooded areas." RCW 36.70A.030(5). "Protection" means "measures designed to preserve the structure, values and functions of the natural environment or to safeguard the public from hazards to health and safety." WAC 365-195-825(2)(b). At a minimum, the regulated critical area for "frequently flooded areas" should include all of the SFHA designated by FEMA. WAC 365-190-080(3). When local governments develop plans and regulations for critical areas such as SFHAs, it is with "special consideration given to conservation or protection measures necessary to preserve or enhance anadromous fisheries." WAC 365-195-925. Such conservation and protection measures should "protect habitat important for all life stages of anadromous fish . . . ." Id. Decl. G. Schuler at 11-12.

The GMA is complemented by Washington's Shoreline Management Act ("SMA"), which requires comprehensive planning and regulation of shorelines and shorelands to "protect[] against adverse effects to . . . the land and its vegetation and wildlife, and the waters of the state and their aquatic life." RCW 90.58.020. Under the SMA, regulated shorelands include any land 200 feet from shorelines, floodways, and all wetlands and river deltas associated with shorelines. RCW 90.58.030(2)(f). Within these areas, local



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

governments are required to adopt regulations "that assure at minimum, no net loss of ecological functions necessary to sustain shoreline natural resources." WAC 173-26-201(2)(c). Decl. G. Schuler at 14. Protected ecological functions include the natural functions of floodplains. WAC 173-26-201(3)(d)(i)(C). Id. at 17. Local governments are specifically required to adopt regulations that will "assure that flood hazard protection measures do not result in a net loss of ecological functions associated with rivers and streams." WAC 173-26-221(3)(b)(iv). Id. at 25.

Washington's Flood Plain Management Act also provides Washington's communities and the Washington Department of Ecology ("Ecology") with considerable authority to examine, approve, or reject construction or reconstruction of any structure in, on, over, or across a stream or channel or floodway. RCW 86.16.020; RCW 86.16.025; RCW 86.16.041. See, e.g., Maple Leaf Investors, Inc. v. Department of Ecology, 88 Wn.2d 726, 565 P.2d 1162 (1977) (denying permit to construct single family homes in flood control zone); Powers v. Skagit County, 67 Wn. App. 180, 835 P.2d 230 (1992) (affirming County ordinance prohibiting residential construction in floodway).

The State of Washington also regulates the modification of its fish-bearing waters through hydraulic project approvals ("HPAs") issued by the Washington Department of Fish & Wildlife. Any work within the waters of the State may be conditioned or denied to protect fish life. RCW 77.55.100; see, e.g., Rains v. Dept. of Fisheries, 89 Wn.2d 740, 575 P.2d 1057 (1978) (affirming denial of HPA for flood control work despite extensive flood damage to applicant's property). As a final catch-all protection, Washington's State Environmental Policy Act ("SEPA") requires that state agencies and local governments consider any significant adverse effects of an action such as a permit for a development in a floodplain. RCW ch. 43.21C. Unlike its federal counterpart, the National Environmental



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Policy Act ("NEPA"), SEPA is not merely procedural. A proposed action may be conditioned or denied under SEPA on the basis of environmental impacts that are identified in the environmental review process. WAC 197-11-660.

**2. Congress has granted regulatory authority over water quality, fish, wildlife, and habitat to agencies other than FEMA.**

Federal law also regulates floodplain development through federal and state agencies other than FEMA. The federal Environmental Protection Agency ("EPA") and Ecology jointly regulate water quality under the Clean Water Act. 33 U.S.C. § 1251, et seq.; RCW ch. 90.48. The U.S. Army Corps of Engineers (the "Corps") regulates dredge and fill activities in waters of the United States under Section 404 of the Clean Water Act. 33 U.S.C. § 1344. And the U.S. Fish & Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") protect threatened and endangered species by enforcing the "take" prohibition under Sections 4(d) and 9 of the ESA. 16 U.S.C. §§ 1533(d), 1538(a)(1)(B).

The requirements of the federal Clean Water Act and its state counterpart provide a comprehensive framework for protection of water quality in floodplains. EPA and Ecology are responsible for enforcement of Washington State water quality standards and administration of the National Pollution Discharge Elimination System ("NPDES") permit program. Ecology recently approved water quality standards specifically designed for the protection of anadromous fish. WAC 173-201A-200. Decl. G. Schuler at 29-32. To protect water quality, EPA and Ecology regulate sources of water pollution, including stormwater from construction sites and from municipal stormwater systems. Id. at 33-37. In Washington, an NPDES permit may be used to directly regulate development in floodplains. See, e.g., Ferndale Town Center LLC v. Dep't of Ecology, 2003 WA ENV LEXIS 60 *23



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

(Wa. Pollution Control Hearings Board 2003) (Ecology has authority under NPDES to regulate development in 100-year floodplain to protect water quality from pollution during construction and future land use because flooding may result in pollution discharges). Decl. of G. Schuler at 38-49.

Ferndale Town Center also demonstrates the effective reach of another federal regulatory program that directly controls the use of floodplains. A Clean Water Act section 404 dredge and fill permit from the Corps was required for the project. Id. *18. The jurisdictional reach of the Corps extends to waters of the United States. 33 U.S.C. § 1362(7). It is inconceivable that floodplain waters that are accessible to Puget Sound chinook salmon would not be considered waters of the United States. As with Ferndale Town Center, any dredging or filling in those floodplain waters, including wetlands, would trigger a federal permit requirement. Such a federal permit would constitute an agency action triggering the consultation requirement under Section 7 of the ESA if the project may affect ESA-listed fish. 16 U.S.C. § 1536(a)(2).

Finally, if a development authorized under myriad state and federal laws still has the potential to adversely affect Puget Sound chinook, any "take" of the listed species through actions that cause death or injury, including habitat modification, is strictly prohibited by the ESA. Babbitt v. Sweet Home Chapt., Communities for a Great Oregon, 515 U.S. 687 (1995) (affirming definition of "take" that includes habitat modification).

FEMA does not authorize development in floodplains when it administers the NFIP. Development in floodplains is caused by third parties and it is authorized by other agencies with authority to do so under a formidable framework of federal and state laws that protect the environment and Puget Sound chinook salmon.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

## IV. ARGUMENT

NWF asserts a single claim under Section 7(a)(2) of the ESA, which requires each federal agency to ensure that any "agency action" is not likely to jeopardize the continued existence of a listed species or adversely modify its critical habitat. 16 U.S.C. § 1536(a)(2). To fulfill this obligation, each federal agency has a procedural duty to consult with the FWS or NMFS "on any prospective agency action" if a listed species may be present and is likely to be affected by the action. 16 U.S.C. § 1536(a)(3).

NWF alleges that FEMA violated a duty to consult on "implementation of the NFIP" within the range of Puget Sound chinook salmon. NWF Brief at 17. To sustain its claim, NWF must demonstrate the existence of the factual predicate that triggers Section 7 consultation— a discretionary agency action that may affect listed chinook salmon. If NWF fails to identify the specific discretionary action(s) by FEMA that may affect Puget Sound chinook, NWF fails to establish standing for a justiciable case under Article III of the Constitution. If NWF fails to identify specific discretionary action(s) that may affect Puget Sound chinook, NWF also fails to prove a claim that warrants relief under the ESA.

### A. NWF Has Not Met Its Burden of Establishing Standing or the Elements of a Duty to Consult.

To establish Article III standing, a plaintiff has the burden of satisfying three "irreducible constitutional minimum" standing requirements:

> 1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
>
> 2) the injury is fairly traceable to the challenged action of the defendant;
>
> 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Defenders of Wildlife, 504 U.S. at 560-61. Because it has refused to identify any specific discretionary action by FEMA requiring consultation, NWF cannot show injury in fact that is reasonably probable and fairly traceable to a missing agency action, and that would or could be redressed by a favorable decision requiring consultation on unspecified agency action. NWF's complaint should be dismissed on summary judgment, as there are no material facts in dispute with regard to NWF's lack of standing or its failure to prove a claim.

**1. NWF provides no evidence of specific action by FEMA that may affect NWF's interest in Puget Sound chinook salmon.**

To establish standing, NWF filed four declarations in this matter. The declarants describe their interests in rivers and streams that are chinook habitat, but they do not identify any NFIP action that affects those interests. Two of those declarations make absolutely no reference whatsoever to FEMA or the NFIP. See Declaration of K. Robert Johnson at ¶ 12 ("If federal and local agencies took greater care about where and how they authorized development, . . . salmon wouldn't be in the dire situation that they are now in."); Declaration of Robert E. Jacobs at ¶ 10 ("If agencies and individuals took greater care about where and how they developed land for human use, the environment would be healthier, fish could be restored, and I would be happier and more fulfilled.")

The other two declarations refer to FEMA, but they do not identify even one specific action by FEMA that may affect Puget Sound chinook salmon. In fact, they do not even indicate whether they are addressing FEMA's implementation of the NFIP (the "agency action" claimed by NWF) or some other action or program implemented by FEMA. Instead, they offer mere allegations devoid of any factual or legal underpinnings. The Declaration of Thea Levkovitz only states: "FEMA, could help reduce the impacts of development on



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

salmon habitat in Puget Sound . . . ." Declaration of Thea Levkovitz at ¶ 12. Levkovitz never explains how FEMA might do this or whether it involves discretionary agency action related to the NFIP. This is not a statement of fact—it is a statement of a vague legal or factual possibility. The Declaration of Paula J. Del Giudice is equally inadequate. She states that "[t]he defendant in this case [FEMA] is responsible for authorizing and/or encouraging development in floodplains in Puget Sound, and thus, for harming salmon habitat. If the defendant was to stop authorizing development, or alter its authorizations to protect and preserve habitat, . . . habitat destruction would be reduced."). Decl. P. Del Giudice at ¶ 10. There is no statement of fact regarding the NFIP. There is no statement of fact regarding specific action by FEMA. There is only an unsupported allegation, with no basis in law or personal knowledge of specific facts, that FEMA authorizes development.[2]

After filing these declarations, NWF was provided with the opportunity to rehabilitate their factual deficiencies through responses to interrogatories. FEMA asked each declarant to explain the factual connection between FEMA and the declarant's factual claim of injury to an interest in chinook salmon. In every case, NWF responded with: "The statement speaks for itself and needs no explanation or elaboration." Pl.'s Resp. to Interrogs. (FEMA Nos. 3, 9, 15 and 21). FEMA asked for the facts supporting Del Giudice's general allegation that FEMA authorizes and encourages development, and no facts were provided in response. Id. No. 4. FEMA also asked Ms. Levkovitz for facts supporting her contention that FEMA could help reduce the impacts of development. Again, no facts were provided in response. Id. No. 10.

---

[2] FEMA does not authorize development. See supra Sections III.B and III.C.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

NAHB's interrogatories also provided NWF with the opportunity to identify at least one specific action by FEMA that may affect Puget Sound chinook. NAHB interrogatories asked NWF to identify any specific NFIP implementing action that may affect Puget Sound chinook salmon, including specific questions on community eligibility determinations, flood-insured projects, and map determinations. In every instance, NWF refused to provide any factual evidence of a FEMA action that may affect chinook:

> Plaintiffs have not claimed to have broken FEMA's implementation of the NFIP into separate parts and identified particular impacts associated with each activity.

Pl.'s Resp. to Interrogs. at 20.

> Plaintiffs are unaware of any specific information regarding how individual [community] eligibility determinations may have effected chinook salmon.

Id. at 22.

> Plaintiffs have alleged that defendants have failed to consult on its implementation of the NFIP, not the effects of any specific development project.

Id. at 23.

> Plaintiffs have alleged that defendants have failed to consult on its implementation of the NFIP, not the effects of any specific action with regard to any specific flood hazard area determination, flood insurance rate map issuance or amendment, or community assistance visit.

Id. at 24.

> Plaintiffs have alleged that defendants have failed to consult on its implementation of the NFIP, not the effects of any specific error or inaccuracy in individual maps.

Id. at 25. In short, NWF is unable to point to any specific action by FEMA that implements the NFIP and may effect Puget Sound chinook salmon. This alone requires that NWF's



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

claim be dismissed because NWF has not satisfied the essential injury and causation elements of standing.

**2. The NFIP is a program—not an "agency action."**

Clearly, NWF has staked its standing and its claim on the assertion that the NFIP is an "agency action." This does not satisfy Article III standing requirements and it cannot survive summary judgment. For purposes of standing, a program is not "agency action." National Wildlife Federation, 497 U.S. at 890 n.2 (no standing for "a generic challenge to all aspects of the 'land withdrawal review program' as though that itself constituted a final agency action"). The Supreme Court has explained that this sort of broad challenge to a federal program cannot provide the basis for standing because there is no specific action that can be said to cause injury:

> [R]espondent cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. . . . [R]espondent must direct its attack against some particular "agency action" that causes it harm.

Id. 497 U.S. at 891 (emphasis in original). National Wildlife Federation involved a "challenge [to] the entirety of petitioners' so-called 'land withdrawal review program.'" Id. at 890. The Court recognized that there was simply no place the plaintiff could point and say, "that action causes my injury." As a result, the plaintiff could not satisfy its standing burden, even though it alleged a variety of procedural violations in the program. Id. at 891.

In a recent case, this Court applied National Wildlife Federation to an ESA citizen suit alleging that EPA violated its duties under ESA Section 7(a)(2) by failing to engage in consultation on pesticide registrations under the Federal Insecticide, Fungicide, and Rodenticide Act that may affect listed salmon. See Washington Toxics Coalition, at 9-14



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

(Decl. J. Hasselman. Ex. 10). In Washington Toxics Coalition, plaintiffs sought consultation on EPA registration of 953 active ingredients found in approximately 19,000 pesticide products. Id. at 9 n.16. Based on National Wildlife Federation, defendants moved to dismiss the suit for lack of standing to bring a programmatic challenge. This Court concluded that the lawsuit was not a challenge to a program because plaintiffs specified 953 ongoing agency actions as the basis for their claim. Id. at 11. However, Washington Toxics Coalition also held that, even under the relaxed standards for procedural standing, plaintiffs had produced no evidence showing that alleged harms were fairly traceable to 898 of the pesticide registrations:

> [P]laintiffs must demonstrate standing separately for each section 7(a)(2) claim. . . . The Court identifies 55 pesticide active ingredients for which plaintiffs submit scientific or competent declaratory evidence demonstrating a causal link between EPA's ongoing registration actions and direct or indirect adverse effects on salmonid populations. However, with respect to the 898 other pesticide active ingredients, plaintiffs submit absolutely no evidence in any form showing that EPA's respective actions are fairly traceable to an actual or threatened injury to threatened and endangered salmonids. . . . Thus, plaintiffs give to the Court no basis to conclude that 898 unidentified pesticides have any adverse effect on salmonids. Supreme Court precedent demands more. Although the Court agrees that plaintiffs' burden is relatively minimal, plaintiffs' evidentiary burden exists with respect to each agency action challenged. Accordingly, the Court grants EPA's motion to dismiss or for summary judgment and DISMISSES without prejudice plaintiffs' section 7(a)(2) claims with respect to the 898 pesticide active ingredients for which plaintiffs fail to submit any evidence of causation.

Id. at 13-14 (emphasis added).

NWF's claim here cannot survive the Article III standing requirements applied in Washington Toxics Coalition. First, to establish any standing, plaintiffs in Washington



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Toxics Coalition identified 953 specific registration actions. Here, NWF has stated over and over that it asserts a programmatic challenge and it will not identify any specific NFIP implementing action that may affect Puget Sound chinook salmon. Second, just as the plaintiffs in Washington Toxics Coalition failed to adduce any evidence showing that 898 registrations may affect salmon, NWF has admitted that it has no evidence to show that any specific NFIP actions may affect chinook salmon. See, e.g., Pl.'s Resp. to Interrogs. at 22 ("Plaintiffs are unaware of any specific information regarding how individual [community] eligibility determinations may have effected chinook salmon.").[3] NWF does not have standing to proceed with its claim.

### 3. Allegations of potential programmatic influence are not facts showing injury and causation.

To advance its interests, NWF asks the Court to order ESA consultation for the NFIP, in general, so that FEMA might search for a means to convert an insurance program into a tool that will somehow reform environmental and land use regulation in the Puget Sound region.[4] NWF also proposes that, during the requested exploratory consultation,

---

[3] NWF's claim relies heavily on Florida Key Deer v. Stickney, 864 F. Supp. 1222 (S.D. Fla. 1994). However, even Key Deer illustrates why NWF does not have standing in this case. In Key Deer, a specific agency action—NFIP eligibility for a single jurisdiction based on specific county ordinances—was identified as the basis for NWF's claim and the court concluded that NWF had presented evidence of cause and effect between development authorized by the county and adverse effects on key deer habitat. Id. at 1126 (¶ 14), 1229 (¶ 35). See also Key Deer BiOp, Decl. J. Hasselman, Ex. 12, at 2.2 ("This Biological Opinion is not an evaluation of the effects of the NFIP on threatened and endangered species in SFHAs throughout the United States. Instead, this is a programmatic consultation that is limited to the NFIP as administered in Monroe County, Florida.") Here, NWF has presented no equivalent evidence of a specific FEMA action or its factual context.

[4] NWF points to a letter that NMFS sent to FEMA generally suggesting consultation on the NFIP. AR 109. The NMFS letter was a response to a FEMA proposal for an ESA consultation protocol governing FEMA's truly discretionary actions other than the NFIP. AR 108. That protocol is now complete and it does not include the NFIP. Decl. J. Hasselman. Ex. 11. NMFS's remark about consultation on the NFIP should be viewed for what it was, a gratuitous statement by a non-expert agency that is not responsible for



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

FEMA should be enjoined from issuing flood insurance for new development.[5] This would severely burden every community in Puget Sound regardless of how well the community regulates land use for the protection of chinook salmon and regardless of the fact that agencies and authorities other than FEMA and the NFIP are directly charged with protection for fish habitat, water quality, shorelines, wetlands, and floodplains. Without identifying specific actions by FEMA that implement the NFIP and may affect salmon, NWF asks the Court to speculate that an exploratory consultation might uncover some means by which the NFIP could be used to change actions by third parties.

In Defenders of Wildlife, the Supreme Court rejected standing for a programmatic challenge to the promulgation of ESA Section 7(a)(2) consultation regulations because speculation concerning the future actions of unknown third parties does not demonstrate causation or redressability:

> When . . . plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict, [citation omitted] and it becomes the burden of plaintiff to adduce facts showing that those choices have

---

implementation of the NFIP and does not have expertise to determine what is or is not discretionary action under the NFIA. Deference is due to FEMA, not NMFS, in the interpretation of the NFIA. See State of Hawaii v. FEMA, 294 F.3d 1152, 1159 (9th Cir. 2002). The decision in Florida Key Deer v. Stickney, 864 F. Supp. 1222, 1231–1235 (S.D. Fla. 1994), relied on by NWF, improperly accorded deference to FWS in its interpretation of what constitutes action by FEMA under the NFIA. That is not the law of the Ninth Circuit.

[5] NWF's prayer for relief asks for the suspension of flood insurance for any new development throughout the Puget Sound region. NWF Complaint, Prayer for Relief ¶ 3.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

> been or will be made in such a manner as to produce causation and permit redressability of injury.

504 U.S. at 562; followed by Bell v. Bonneville Power Admin., 340 F.3d 945, 951 (9th Cir. 2003) (even where standards are relaxed for procedural standing in a NEPA claim, causation is still a constitutional necessity and cannot be satisfied by speculation on how private industry might react to amended power supply contracts).

To establish a specific connection between discretionary actions by FEMA and human development that may affect salmon, NWF must do more than declare: "[i]t is beyond dispute that implementation of the NFIP by FEMA affects the nature and character of development in floodplains." NWF Brief at 10. NAHB has already shown that the NWF standing declarations and responses to interrogatories provide no evidence of specific FEMA actions that may affect salmon. To satisfy standing requirements, NWF must establish a fairly traceable link between specific discretionary actions by FEMA that cause or authorize human development that may affect salmon. Otherwise, any federal program with the potential to indirectly influence human activity in a Puget Sound floodplain is, *per se*, a program requiring ESA consultation because natural portions of floodplains provide habitat functions for chinook salmon that could be affected by human activity.[6] Under this interpretation of law, the possibilities for ESA consultation would be boundless. For example, the Internal Revenue Service would have to conduct an exploratory ESA consultation on how tax regulations might be used to alter human development in

---

[6] Fed. R. Civ. P. 56 does not require NAHB to negate the unproven elements of NWF's case. However, it is noteworthy, as a matter of fact, that a federally funded development can occur within a designated SFHA and have no effect on Puget Sound chinook salmon. Decl. G. Schuler at 52, 59, 61, 109-110. (ESA "no effect" determination for federally funded transit project in SFHA, Mt. Vernon, Washington).



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

floodplains to benefit salmon. Standing requires something more than potential, indirect agency influence on third-party actions within the range of the species.

NWF's theory of programmatic "action" and causation demonstrates why specific facts concerning specific actions are necessary for standing and a valid claim. NWF supports its motion for summary judgment with the "expert" declarations by Cleveland R. Steward III and Alan R. Wald, but these declarations provide no evidence of an action by FEMA that implements the NFIP and may affect threatened Puget Sound chinook salmon. Because the declarations are neither relevant nor reliable, NAHB requests that the Court exclude them from consideration pursuant to Fed. R. of Evid. 702.

The proponent of expert testimony has the burden of establishing that the testimony meets the requirements of Fed. R. of Evid. 702. Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1316 (9th Cir. 1995) ("Daubert II") ("the party presenting the expert must show that the expert's findings are based on sound science"). NWF must therefore present affirmative proof to show that the reasoning and methodology used by Mssrs. Steward and Wald satisfy the standard set down by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) ("Daubert") that expert testimony be both relevant and reliable. The Declarations of Mssrs. Steward and Wald fail that test.

**a. The Declaration of Cleveland R. Steward III**

NWF relies on the Declaration of Cleveland R. Steward to support the argument that floodplains include chinook habitat that may be adversely affected by human development. NWF Brief at 2-4. The Declaration summarizes selected literature in support of three points: (1) natural floodplains are important to salmon, Decl. C. Steward ¶¶ 12-21; (2) salmon are adversely affected by dikes, levees, and dredging that channelize rivers, id. ¶¶ 22-39; and (3) floodplain development and urbanization may adversely affect salmon, id.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

¶¶ 40-52. However, the Declaration provides no facts, opinions, or references to FEMA, the NFIP, or actions that implement the NFIP.

Mr. Steward testified that he conducted no independent research, did no field research of any kind, engaged in no experimentation, analyzed no specific development proposals and looked at no construction projects in the process of preparing his declaration. Decl. G. Schuler at 116. Mr. Steward testified that he conducted no research to determine whether FEMA or the NFIP affect development within the floodplains of Western Washington. Id. at 118-119. Mr. Steward also testified that he did not believe that he reviewed any literature related to FEMA or NFIP as confirmed by the list of literature attached to the end of his declaration. Id.; see Decl. C. Steward at 22-25. Mr. Steward's expert testimony is simply irrelevant to NWF's claim that FEMA implements the NFIP using discretionary actions that may affect Puget Sound chinook salmon.

Expert testimony must be excluded if it is not relevant. See e.g., Daubert II, 43 F.3d at 1313. To be relevant in this case, an expert's testimony is required to logically advance a material aspect of plaintiffs' case. Id. Mr. Steward makes no relevant observations concerning a relationship between FEMA, the NFIP, and Puget Sound chinook salmon.

Mr. Steward's testimony should also be excluded because he disclaims any expertise on the relationship between FEMA, the NFIP, and Puget Sound chinook salmon. Decl. G. Schuler at 115, 117-18. Even NWF's counsel argued that such testimony is outside Mr. Steward's area of expertise. When Mr. Steward was asked to describe what he knew about FEMA, NWF's counsel objected on the basis that FEMA is beyond the scope of Mr. Steward's expertise. Id. at 116-117. When asked to discuss the relationship of flood insurance to development of land located in floodplains, counsel for NWF again objected on the basis that such questions were outside the area of Mr. Steward's expertise. Mr. Steward



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

followed that objection by stating "I would second that." Id. at 122. When asked whether it was his opinion that FEMA and the NFIP cause urbanization in Western Washington, counsel for NWF objected a third time on the basis that the question was beyond the scope of Mr. Steward's expertise. Id. at 123-24. Finally, when asked whether he had an expert opinion on the causes of urbanization in Western Washington, Mr. Steward stated that he did have an opinion, but that he "wouldn't characterize it as expert." Id. at 123. NWF does not meet the burden of showing that Mr. Steward's testimony is relevant or reliable in advancing NWF's claim.

**b. The Declaration of Alan R. Wald.**

NWF relies on the Declaration of Alan R. Wald to support its argument that FEMA "authorizes" development in floodplains. NWF Brief at 7, 18. Mr. Wald's declaration does not support this assertion and its does not qualify as reliable expert opinion.

For expert testimony to be admissible under Daubert, an expert's testimony must be reliable in that it is "derived by the scientific method" and reflects "good science." Daubert II, 43 F.3d at 1315. Trial judges are to perform a "gatekeeper" role and exclude evidence that does not meet the Daubert standard. Id. at 1316. Therefore, before admitting expert testimony on an issue of scientific fact or opinion, this Court must satisfy itself that the evidence is reliable.

The Ninth Circuit has stated "[o]ne very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation or whether they have developed their opinions expressly for purposes of testifying." Daubert II, 43 F.3d at 1317; see also Clausen v. M/V New Carissa, 339 F.3d 1049, 1056 (9th Cir. 2003).



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

The Declaration of Alan Wald is biased advocacy prepared for this litigation and not objective expert opinion. Mr. Wald's key statement of opinion on a relationship between the NFIP and salmon was provided to him, word-for-word, by the attorney for NWF. Compare Decl. A. Wald ¶ 10:

> In my opinion, the NFIP has not been effective in reducing the amount of flood damages or the amount of development in floodplains, and is destroying salmon habitat and undermining salmon recovery.

with Memorandum from Jan Hasselman, NWF, to Alan Wald (Jan. 5, 2004).

> II. Overview statement: (here's some suggested language, just to get started) . . . The NFIP has not been effective in reducing the amount of flood damages or the amount of development in floodplains, and this is destroying salmon habitat and undermining salmon recovery.

Decl. G. Schuler at 158. It also appears that Mr. Wald questioned this statement as an undocumented conclusion before he adopted it as his own "opinion." See id. (hand written note: "documentation?"). Because NWF attorneys wrote Mr. Wald's "opinion" for him, it is biased advocacy and not objective expert opinion.[7]

In addition to obvious bias, Mr. Wald's opinion is not based on appropriate expertise. Mr. Wald is a hydrogeologist who claims to have education and experience related to "processes of rainfall, runoff, stream flow, groundwater transport, and some estuarine and saltwater processes." Id. at 130-31. Mr. Wald is not an expert biologist who is qualified to offer expert opinion on factors that cause decline or prevent recovery for chinook salmon. Id. at 136. In addition, Mr. Wald does not have expertise in economics, urban planning, real estate development, insurance, natural resource sociology, or any other discipline that would

---

[7] When asked whether counsel for NWF told him what to conclude in his declaration, Mr. Wald answered "no." Decl. G. Schuler at 133.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

qualify him to offer an expert opinion on the causes of human development in floodplains or whether the NFIP is "effective" in reducing human development in floodplains. See id. at 136-139. Mr. Wald does not even provide a standard by which one might measure such effectiveness.

Mr. Wald claims to have "extensive experience in this state with the issues of floodplain regulation and management." Decl. A. Wald ¶ 4. Yet, his declaration omits any consideration of the role and effectiveness of the federal, state, and local regulatory framework that controls floodplain development independent of the NFIP. See supra Section III.C. Courts are justified in excluding evidence if an expert fails to offer an explanation for why he either intentionally excluded information or neglected to consider information. See, e.g., Clausen, 399 F.3d at 1058.

Whether it is expert or lay opinion, Mr. Wald's testimony concerning the "effectiveness" of the NFIP does not show that FEMA authorizes development that may affect salmon. Rather, it suggests that the NFIP reduces the amount of development in floodplains, but not enough to satisfy Mr. Wald (or NWF). Finally, Mr. Wald's conclusion that "this is destroying salmon habitat" is entirely unsupported.

Where, as here, an expert's proffered testimony is based on work done for the purpose of litigation and has not been subjected to peer review:

> [T]he experts must explain precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method as it is practiced by (at least) a recognized minority of scientists in their field.

Daubert II, 43 F.3d at 1319. An analysis of methodology is particularly important where it appears that an expert has gone beyond his area of expertise in forming his opinion. White



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

v. Ford Motor Co., 312 F.3d 998, 1008-09 (9th Cir. 2002) (a "layman, which is what an expert witness is when testifying outside his area of expertise, ought not be appointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion").

In describing his methods, Mr. Wald testified that he did no fieldwork, conducted no site visits and analyzed no specific development proposals or construction projects in preparing his declaration. Decl. G. Schuler at 135. Rather, Mr. Wald merely reviewed his own files, and "researched "on the Web for floodplain related information that may be more current . . . ." Id. at 133-34. He did not explain how he selected or excluded information selected from his files or the parameters of his Internet research. Instead of using an appropriate scientific method to produce an objective opinion, it appears that Mr. Wald is simply stating his strongly held personal views. Id. at 147 ("This project has been a thorn in my side for a long time.").

The rest of Mr. Wald's declaration demonstrates that his bias, lack of expertise, and uncertain methods render his testimony entirely unreliable. Mr. Wald expresses an opinion that flood insurance "contributes" to an increase in development. Decl. A. Wald ¶ 13. His opinion is based on a belief that "flood insurance can greatly increase the value of floodplain land for residential and commercial development." Id. ¶ 12. Under Washington law, however, the NFIP is recognized as a factor that decreases the value of real property within a FEMA-designated SFHA because it signifies risk, lowers rent, and increases the cost of insurance, credit, and construction. See, e.g., KIN Partnership v. Noble, 2003 WASH TAX LEXIS 28 (Wa. Bd. Tax Appeals 2003) (assessor must reduce value to fully account for the fact that the property was located in the 100-year floodplain designated by FEMA); Behm v. Cooney, 1995 WA TAX LEXIS 314 (Wa. Bd. Tax Appeals 1995) (SFHA designation



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

reduces property value because it increases costs of construction, insurance, and financing where there is increased risk). Decl. Galen Schuler at 161-171.

Contrary to Mr. Wald's opinion that the NFIP encourages development, the entire purpose of the NFIP is to constrict, discourage, and limit development in SFHAs. 42 U.S.C. §§ 4001, 4002; accord NWF Brief at 5. Indeed, a key point in Mr. Wald's declaration is that FEMA's SFHA designations are important because they discourage development. Decl. A. Wald ¶¶ 15-16. This presumes that FEMA's SFHA designations cause less development in floodplains by explicitly recognizing risks, increasing costs, and triggering more regulatory restrictions by other agencies. See, e.g., Citizens for Sensible Growth v. City of Leavenworth, 1998 WA ENV LEXIS 125, *10-12 (Wa. Shoreline Hearings Board 1998) (after project opponents questioned the SFHA designated by FEMA, the Corps and FEMA acted quickly to revise the SFHA, Ecology intervened to prevent construction within the SFHA, and the applicant amended the proposal to delete any development within the expanded SFHA); Decl. G.Schuler at 172-183; see also NWF Brief at 6 note 4.

Mr. Wald states that FEMA "authorizes," "allows," and "approves" filling in floodplains. See Decl. A. Wald ¶¶ 18-19. Under the NFIA, however, FEMA does not have authority to administer a program that authorizes or permits fills. A host of federal, state, and local authorities other than FEMA authorize floodplain development and fills. See supra Sections III.B. and C. In his deposition, Mr. Wald concedes that FEMA does not issue permits for floodplain fills. Decl. G. Schuler at 138, 143.

Next, Mr. Wald supports his assertion that FEMA authorizes floodplain fills with two projects that he considers to be good examples of floodplain development resulting from FEMA's implementation of the NFIP. Dec. A. Wald ¶¶ 20-21. Both projects were developed before the listing of Puget Sound chinook in 1999 and one of the projects occurs



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

outside the range of Puget Sound chinook. Mr. Wald provides no evidence to support his allegation that FEMA authorized or encouraged these projects.

The first project is a gas station constructed on fill in the Chehalis River Basin, which is not habitat for Puget Sound chinook salmon. The development was permitted by Lewis County. Baker v. Tri-Mountain Resources, Inc., 1998 WASH. APP. LEXIS 1031 (Wa. Ct. App. 1998). Decl. G. Schuler at 184-191. FEMA did not approve a map revision to remove the filled area from an SFHA. Id.[8] FEMA did not fill the property. Id. at 143. FEMA did not issue a permit to fill the property. Id. FEMA did not cause Lewis County to permit the development. Id. FEMA was only mentioned in the permit process because the project opponents argued that the County failed to consider a map change by FEMA that expanded the SFHA to include the development after it was already permitted by the County. Id., at 191. If anything, this project only demonstrates that the NFIP makes floodplain development more difficult. That is why the project opponents sought to introduce FEMA's map update in their efforts to block the project. This project is not evidence that FEMA approved, authorized, or even encouraged development in a Puget Sound floodplain.

The second project identified by Mr. Wald involved levee construction and floodplain filling for a commercial development along North Creek in Bothell, Washington. Decl. A. Wald ¶ 21. Mr. Wald describes the project as a development that received the

---

[8] In his deposition, Mr. Wald initially described the project as a fill "approved" by FEMA through a map adjustment, but conceded that he was uncertain whether that was, in fact, the case. Decl. G. Schuler at 141-42.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

"green light" from FEMA in 1994. Id.[9] In fact, the development was approved in 1984 after extensive review and permitting by the Corps (dredge and fill permit under section 404 of the Clean Water Act), the City of Bothell (substantial development permit under Shoreline Management Act), and Mr. Wald's current employer, the Washington Department of Fish & Wildlife (hydraulic project approval). Decl. Mark A. Brown, Exs. 1-4. Although Puget Sound chinook salmon were not yet listed as threatened species, the Corps also consulted with NMFS. Id., Ex. 3. Significantly, the project was designed to restore fish habitat in North Creek by relocating its bed from a confined linear channel to a more natural meandering stream bed with vegetated buffers. Id., Exs. 1, 2 at 6-7. NMFS concluded that the project was beneficial to Puget Sound chinook salmon. Id., Ex. 3. [10]

This project is a perfect example of the fact that federal, state, and local agencies other than FEMA are responsible for the regulation of development in floodplains and the protection of chinook salmon under various authorities enacted for that purpose. FEMA did not cause or authorize the project. This project also demonstrates that, because of the required Corps permit, the ESA consultation that NWF seeks certainly would have been redressed by the Corps and NMFS had the project occurred after Puget Sound chinook salmon were listed in 1999. This specific project example identified by NWF shows that development is caused and authorized by agencies and persons other than FEMA.

---

[9] Mr. Wald includes a reference to (Koll/Quadrant Properties, 1994), but it is not included in his list of references. Id. at 12. In his deposition, Mr. Wald testified that a Corps permit file for a 1994 Quadrant project in the area was "peripherally related" to his example, but he was actually referring to the Koll/Quadrant "development," which "took several years of environmental review." Decl. G. Schuler at 146-148.

[10] In his deposition, Mr. Wald testified that he appears in this matter in an official capacity on behalf of the Washington Department of Fish & Wildlife. Decl. G. Schuler at 131-32. It is unclear why WDFW is now officially critical of a project it approved in 1984.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

The Declaration of Alan Wald confirms the wisdom of National Wildlife Federation and Defenders of Wildlife, requiring plaintiffs to establish standing based on specific actions and effects. NWF's superficial programmatic theory of injury and causation requires unreliable speculation on how the NFIP influences human development in floodplains. When that speculation is replaced by specific examples of floodplain development grounded in fact, FEMA's role in allegedly authorizing and encouraging development suddenly evaporates. Without knowing which of FEMA's specific actions may affect salmon, there is absolutely no way of determining whether there is a reasonable probability that some elusive discretionary action threatens NWF's concrete interest. In other words, NWF invests considerable effort in proving a cognizable interest in Puget Sound chinook salmon, but makes no effort to identify even one FEMA action that causes injury to that interest. NWF's failure to identify the action that threatens its interests demonstrates NWF's inability to satisfy the "causation" requirement for standing.

**B. FEMA Does Not Have Discretion for Purposes of Consultation or Redress.**

Although FEMA administers the NFIP through federal actions, they are not discretionary actions requiring consultation. Accordingly, NWF's programmatic challenge also suffers from redressability barriers to standing.

> Instead of attacking the separate decisions to fund particular projects allegedly causing harm, respondents chose to challenge a more generalized level of Government action (rules regarding [ESA] consultation) . . . This programmatic approach has obvious practical advantages, but also obvious difficulties insofar as proof of causation or redressability.

Defenders of Wildlife, 504 U.S. at 568. Even if NWF had identified any of FEMA's actions as the cause of its alleged injury, NWF must then demonstrate that FEMA has discretion to



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

administer the NFIP in a manner that could benefit chinook salmon. NWF cannot prove its claim or establish redressability because it cannot satisfy this burden.

**1. FEMA's duty to consult is limited by the scope of agency discretion.**

To prove its claim and satisfy the redressability element for standing, NWF must show that FEMA has discretion under existing regulations to consult on actions that it could modify for the benefit of Puget Sound chinook. Section 7 of the ESA only applies to "actions in which there is discretionary Federal involvement or control." 50 C.F.R. § 402.03 (emphasis added). "Where there is no agency discretion to act, the ESA does not apply." Natural Resources Defense Council v. Houston, 146 F.3d 1118, 1125-26 (9th Cir. 1998).

Even where there is some discretion, consultation is not required unless the scope of discretion may inure to the benefit of an ESA listed species. Environmental Prot. Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073, 1080 (9th Cir. 2001). The scope of agency discretion is typically more constrained where the federal agency has only limited authority to influence private action:

> [W]here, as here, the federal agency lacks the discretion to influence the private action, consultation would be a meaningless exercise; the agency simply does not possess the ability to implement measures that inure to the benefit of the protected species.

Sierra Club v. Babbitt, 65 F.3d 1502, 1509 (9th Cir. 1995).

Without regard for the obvious prevalence of private and non-federal action in the management of floodplains, NWF insists that the NFIP is an ongoing federal action that requires ESA consultation on the effects of those nonfederal actions. NWF has incorrectly compared FEMA's role in administering the NFIP to the ongoing federal discretion and control that was present in Pacific Rivers v. Thomas, 30 F.3d 1050 (9th Cir. 1994). There,



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

the U.S. Forest Service had "plenary control" over the management and use of federal lands. Simpson Timber, 255 F.3d at 1080. The continuous and pervasive control of the Forest Service in managing national forests sharply contrasts with FEMA's role in administering a flood insurance program in cooperation with state and local governments and private property owners.

To administer the NFIP, FEMA engages in three types of action with no discretion that inures to the benefit of chinook salmon. First, FEMA designates and adjusts maps based on the 100-year BFE. FEMA does not have discretion to draw maps for the benefit chinook salmon. Therefore, FEMA's mapping actions do not include discretion that inures to the benefit of chinook salmon and require consultation. AR 112 (NMFS concurs that "the technical map revisions you [FEMA] propose would not constitute an action for purposes of Section 7 of the ESA."). Second, FEMA enrolls communities that satisfy the minimum criteria for NFIP eligibility. NWF admits that "FEMA's criteria are not designed or intended to protect aquatic habitat, imperiled species, or other environmental values." NWF Brief at 6; accord NWF Complaint ¶ 18. As such, FEMA lacks discretion to make decisions that inure to the benefit of salmon when it makes NFIP eligibility determinations. Third, FEMA underwrites flood insurance for eligible properties in eligible communities. FEMA does not have authority to condition the issuance of flood insurance for the benefit of Puget Sound chinook salmon. See, 44 C.F.R. Part 62.

As such, FEMA's administration of the NFIP is entirely different from the ongoing agency discretion over federal lands, federal projects, and federal resources that required consultation in Pacific Rivers and other cases relied on by NWF. See Houston, 146 F.3d at 1125-26 (renewal of specific federal contracts for water delivery from federal reclamation project); Pacific Coast Federation of Fishermen's Ass'ns v. Bureau of Reclamation, 138 F.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Supp. 2d 1228 (N.D. Cal. 2001) (agency did not contest whether consultation required for ongoing operation of federal reclamation project); Greenpeace v. Nat'l. Marine Fisheries Serv., 80 F. Supp. 2d 1137 (W.D. Wash. 2000) (agency did not contest whether consultation is required for federally managed fishery); but see Defenders of Wildlife v. Norton, 257 F. Supp. 2d 53 (D.D.C. 2003) (no consultation required for federal reclamation project when agency discretion and authority provides no possible remedy and redress as a result of consultation). The NFIP does not provide FEMA with discretion over non-federal actions that could be exercised for the benefit of salmon.

**2. NWF fails to identify discretion within the NFIP that may inure to the benefit of chinook salmon.**

NWF argues that "FEMA has substantial discretion in its implementation of the NFIP," but the statutes and rules cited by NWF show that none of that discretion inures to the benefit of salmon. NWF Brief at 9.

First, NWF points to FEMA's authority to issue regulations consistent with the purposes of the NFIA. But the Court will not find regulation of land use for the benefit of fish and wildlife among those purposes. See 42 U.S.C. §§ 4001, 4002. The NFIP only seeks to influence land use regulation to reduce hardships caused by flood disasters and spread the risk of loss through flood insurance premiums. Id. The ESA does not supplement FEMA's authority under the NFIA. County of Okanogan v. Nat'l Marine Fisheries Serv., 347 F.3d 1081, 1085 (9th Cir. 2003); accord American Forest & Paper Ass'n v. U.S. E.P.A., 137 F.3d 291, 299 (5th Cir. 1998) ("[T]he ESA serves not as a font of new authority, but as something far more modest: a directive to agencies to channel their *existing* authority in a particular direction."); Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC, 962 F.2d 27, 34 (D.C. Cir. 1992) ("[T]he [ESA] directs agencies to 'utilize



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

their authorities' to carry out the ESA's objectives; it does not *expand* the powers conferred on an agency by its enabling act.") (emphasis in original).

Next, NWF points to Executive Order 11988 (May 24, 1977), as interpreted by FEMA's regulations at 44 C.F.R. Part 9. The order and regulations may interpret the NFIA, but they cannot expand FEMA's statutory grant of authority. The executive order and regulations require FEMA to use its discretion to minimize and avoid the destruction or modification of wetlands. 44 C.F.R. § 9.2. This is accomplished through an eight-step decision making process. 44 C.F.R. § 9.6. Significantly, all of the actions that FEMA might take to implement the NFIP are specifically exempted from that process. 44 C.F.R. § 9.5(f)(2)(i)-(v). The order and rules do not provide discretion for the administration of the NFIP to benefit salmon.

In its search for discretionary authority that might benefit salmon, NWF also grasps at FEMA's regulations for the implementation of decision-making procedures required by NEPA. 44 C.F.R. Part 10 (implementing 42 U.S.C. § 4321 et seq.). NEPA is a purely procedural statute; it does not add to FEMA's authority under the NFIA. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 351-53 (1989). FEMA's procedural NEPA rules for decision-making do not provide discretion that inures to the benefit of salmon.

Last, NWF argues that the NFIA requires FEMA to "consult" with other federal agencies to make certain that the NFIP is "mutually consistent" with other agency programs and goals. NWF Brief at 10 (citing 42 U.S.C. § 4024). The cited provision cannot be properly construed as an expansion of FEMA's authority to use ESA consultation to provide fish and wildlife conservation through the NFIP. It provides:

> In carrying out this chapter, the Director shall consult with other departments and agencies of the Federal Government, and with interstate, State, and local agencies having responsibilities for flood



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

> control, flood forecasting, or flood damage prevention, in order to assure that the programs of such agencies and the flood insurance program authorized under this chapter are mutually consistent.

42 U.S.C. § 4024 (emphasis added). In other words, FEMA must ensure that implementation of the NFIP is consistent with other federal, state and local agencies' flood control and damage prevention measures. NWF's assertion that this provision requires ESA consultation for every activity within the NFIP distorts the statute's plain language.

In sum, NWF has failed to identify discretion that FEMA may exercise for the benefit of Puget Sound chinook salmon. As such, NWF has failed to prove its claim.

**C. Authority to Engage in Rulemaking is Not "Ongoing Agency Action."**

Because FEMA does not have discretion to administer the NFIP for the benefit of salmon, NWF is left with an argument that FEMA should consult on its potential authority to amend NFIP regulations such as community eligibility criteria. NWF Brief at 24. However, Section 7(a)(2) of the ESA does not impose on agencies a duty to consult for purposes of considering whether to even propose an agency action such as rulemaking. ESA consultation on NFIP regulations requires a pending or recent rulemaking that may affect salmon.[11] Without identifying a present or recent rulemaking, NWF may only gain consultation on NFIP regulations if FEMA proposes new rulemaking that may affect Puget Sound chinook salmon.[12]

---

[11] In response to NAHB Interrogatory No. 7, NWF refused to identify a particular rulemaking action as the basis for ESA consultation. Pl.'s Resp. to Interrogs. at 21.

[12] A "may affect" determination for proposed regulations cannot be assumed because any rulemaking action would still be limited to the purposes of the NFIA, which do not encompass salmon conservation. See 42 U.S.C. §§ 4001, 4002, 4128.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

The decision to engage in rulemaking is committed to FEMA's discretion unless NWF has shown that the NFIA imposes a clear, non-discretionary obligation on FEMA to amend its regulations. See ONRC Action v. B.L.M., 150 F.3d 1132, 1136-39 (9th Cir. 1998) (dismissing challenge to regional land management approach because plaintiffs failed to identify agency action subject to procedural statute or prove that agency action was required by agency's enabling act). Such a duty does not arise under Section 7 of the ESA. If such a duty exists at all, it must be found in the NFIA. If NWF seeks to prove and vindicate such a duty, it must seek review under the Administrative Procedures Act's ("APA") provision for agency inaction. 5 U.S.C. § 706(1). That is not the claim that NWF pleads here.[13]

Before such a cause of action is ripe for review, NWF must petition FEMA for rulemaking under the APA. 5 U.S.C. § 553(e).[14] Then, NWF must meet a heavy burden before this Court could properly order FEMA to engage in rulemaking. Under the APA, a mandatory injunction is governed by the scope of review provided in 5 U.S.C. § 706(1) ("The reviewing court shall – (1) compel agency action unlawfully withheld or unreasonably delayed."). In the Ninth Circuit, the standard of review under the APA's Section 706(1) has been equated with the standard of review for a mandamus action. Independence Mining Co. v. Babbitt, 105 F.3d 502, 507 (9th Cir. 1997) (citing Japan Whaling Ass'n v. American Cetacean Soc'y, 478 U.S. 221, 230 n.4 (1986)). A mandatory injunction is an exceptional remedy. California Power Exchange Corp. v. Federal Energy Regulatory Comm'n, 245 F.3d

---

[13] See Pl.'s Resp. to NAHB Interrogs., No. 6, at 20.

[14] NWF admits that it did not petition FEMA for rulemaking. Pl.'s Resp. to NAHB Interrogs., No. 8, at 21.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1110, 1120 (9th Cir. 2001). For purposes of mandamus relief, plaintiffs must prove "a clear, non-discretionary agency obligation to take a specific affirmative action, which obligation is positively commanded and 'so plainly prescribed as to be free from doubt.'" Independence Mining, 105 F.3d at 508 (citation omitted).

FEMA has not withheld rulemaking that is plainly prescribed by law and NWF has not stated a claim that would allow the Court to order FEMA into ESA consultation for the purpose of considering or engaging in rulemaking. Yet, NWF asks the Court to twist the ESA's requirement for consultation on agency action into an instrument that requires agency action (rulemaking). NWF's theory turns ESA Section 7 on its head by requiring consultation to create agency action rather than consultation in response to agency action. The Court should reject NWF's claim and grant NAHB's motion for summary judgment.

## V. CONCLUSION

For the reasons set forth above, Intervenor Defendants NAHB et al. respectfully request that the Court strike NWF's "expert" declarations, deny NWF's motion for summary judgment, enter summary judgment in favor of defendants and dismiss NWF's claim with prejudice.

RESPECTFULLY SUBMITTED this ____ day of March, 2004.

Of Counsel:

Duane Desiderio
Thomas Ward
Felicia Watson
**National Association of Homebuilders**

s/Galen G.B. Schuler
State Bar Number 25158
Mark W. Schneider, WSBA No. 14105
Eric S. Merrifield, WSBA No. 32949
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206-583-8442 Fax: 206-583-8500
E-mail: GSchuler@perkinscoie.com
**Attorneys for National Association of Home Builders, et al.**

## CERTIFICATE OF SERVICE

On March 26, 2004, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following documents:

**NAHB, et al.'s Motion for Summary Judgment and to Strike.**

| | | |
|---|---|---|
| Jan Erik Hasselman<br>National Wildlife Federation<br>418 First Avenue West<br>Seattle, WA 98119 | X<br>___<br><br>___<br>___<br>X | Via hand delivery<br>Via U.S. Mail, 1st Class, Postage Prepaid<br>Via Overnight Delivery<br>Via Facsimile<br>Via E-filing |
| John Kostyack<br>Senior Counsel<br>National Wildlife Federation<br>Manager, Species Restoration Program<br>Office of Congressional & Federal Affairs<br>1400 16th Street, NW, Suite 501<br>Washington, DC 20036 | ___<br>X<br><br>___<br>___<br>___ | Via hand delivery<br>Via U.S. Mail, 1st Class, Postage Prepaid<br>Via Overnight Delivery<br>Via Facsimile<br>Via E-filing |
| Carter Howell<br>Trial Attorney<br>U.S. Department of Justice<br>Environmental & Natural Resources Division<br>Wildlife & Marine Resources Section<br>PO Box 7369<br>Washington, DC 20044-7369 | ___<br>___<br><br>X<br>___<br>X | Via hand delivery<br>Via U.S. Mail, 1st Class, Postage Prepaid<br>Via Overnight Delivery<br>Via Facsimile<br>Via E-filing |



**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, this 26th day of March, 2004.

s/ Galen G.B. Schuler
State Bar Number: 25158
Attorneys for Defendants
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206-359-8442
Fax: 206-359-9442
E-mail: GSchuler@perkinscoie.com