UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

NATIONAL WILDLIFE FEDERATION, )
PUBLIC EMPLOYEES FOR ) CASE NO.
ENVIRONMENTAL RESPONSIBILITY ) CV03-2824
)
Plaintiffs, )
)
TOM RIDGE, SECRETARY )
DEPARTMENT OF HOMELAND )
SECURITY, )
)
Defendant. )
_____ )

## DECLARATION OF MICHAEL M. GRIMM

I, Michael M. Grimm state as follows:

1. I am the Chief of the Community Assistance Section (the "Section"), Risk Assessment Branch, Mitigation Division, Federal Emergency Management Agency (FEMA), Emergency Preparedness and Response Directorate, Department of Homeland Security. In that capacity, I have oversight and management responsibility for the Section including staff management, budget development, and program management and execution. The Section is primarily responsible for managing and coordinating the implementation of the floodplain management requirements of the National Flood Insurance Program (NFIP), including establishing minimum floodplain management criteria, administering enrollment and eligibility of communities, and implementing the Community Rating System ("CRS"). I am also a member of the task force established by FEMA to initiate consultation with the National Marine Fisheries Service (NMFS) on the effect of various activities of the NFIP on Chinook salmon as part of FEMA's compliance with the November 15, 2004 Order issued in the above-captioned case.

1

2. On November 15, 2004, the Court issued an Order for FEMA to "initiate consultation with NMFS on the impacts of its implementation of the NFIP—specifically on the impacts of the minimum eligibility criteria, mapping the floodplains, and revisions thereof, and on the CRS on Puget Sound Chinook salmon, within 60 days of the entry of this Order." Order at 41. In addition, the Court held FEMA was not required to consult on the "impacts on the actual sale of flood insurance, either directly or through third parties, on the Puget Sound Chinook salmon." Id.

3. On November 19, 2004, FEMA's Office of General Counsel convened a meeting to discuss complying with the Order. During the meeting, FEMA established a task force consisting of staff from offices responsible for mapping, floodplain management, CRS, and environmental compliance, as well as FEMA's Office of General Counsel. FEMA established the task force to identify the actions to be considered in the consultation, the human and financial resources needed to complete the consultation, and the difficulties FEMA may encounter in consulting on an existing, on-going, regulatory program.

The task force includes the following FEMA officials and employees:

- David Maurstad, Acting Director, Mitigation Division/Acting Federal Insurance Administrator;
- Michael Buckley, Acting Deputy Director, Mitigation Division;
- Cliff Oliver, Branch Chief, Risk Assessment Branch, Mitigation Division;
- Michael Grimm, Section Chief, Community Assistance Section, Mitigation Division;
- Michael Robinson, Senior Program Analyst, Community Assistance Section, Mitigation Division;
- Charles M. Plaxico, Branch Chief, Risk Insurance Branch;
- Michael Howard, Branch Chief, Risk Identification Branch, Mitigation Division;
- Doug Bellomo, Acting Section Chief, Hazard Identification Section, Mitigation Division;
- William Blanton, Hydraulic Engineer, Hazard Identification Section, Mitigation Division;
- Kelly Bronowicz, Hydraulic Engineer, Hazard Identification Section, Mitigation Division;

- Kevin Long, Hydraulic Engineer, Hazard Identification Section, Mitigation Division;
- Carl Cook, Director, Mitigation Division, FEMA Region X;
- Mark Eberlein, Environmental Officer, FEMA Region X;
- Brent Paul, Environmental Officer, FEMA HQ;
- Barbara Montoya, Trial Attorney (the attorney assigned to the case);
- Amy Weinhouse, Program Attorney (Environmental Compliance);
- Rick Neal, Program Attorney (NFIP); and
- Jordan Fried, Associate General Counsel, FEMA.

4. On November 18, 2004, FEMA updated its budget and draft spending plan and recommended that funds be made available to the NFIP to consult with NMFS pursuant to the Order. This spending expenditure was approved, and on January 12, 2005, FEMA Headquarters transferred to FEMA Region X sufficient funding to hire necessary experts and prepare its consultation document.

5. On November 22, 2004, the task force again met to identify the immediate tasks it needed to accomplish before FEMA could initiate consultation with NMFS. The group identified the following tasks to be completed: 1) identify the actions to be considered; 2) prepare a briefing document describing the implementation of the NFIP; 3) identify the specific areas that may be affected by such actions; 4) identify the listed species or critical habitat that may be affected by such actions; 5) brainstorm on various approaches to analyze any cumulative effects of FEMA's actions; and 6) identify the challenges FEMA will encounter in its consultation.

6. On November 24, 2004, the task force met to discuss mapping activities. The mapping staff agreed to compile a list of the map products it develops and to evaluate whether those products should be considered agency actions, and as such, included in the consultation.

7.  On December 6, 2004, the task force met to discuss the work and research performed since the November 22nd and 24th meetings. During this meeting, the mapping staff explained the types of models, data requirements, and studies it uses to determine the base flood elevation ("BFE"), special flood hazard areas ("SFHA"), and floodway designations. The mapping staff explained once this data is analyzed, FEMA incorporates this information onto a Flood Insurance Rate Map ("FIRM") and this map is used in NFIP participating communities to manage floodplain development and reduce the risk of flood damage. At the conclusion of this session, the task force developed a proposed list of actions to be considered and tasked the mapping staff to determine whether these actions had occurred in or are occurring within the Puget Sound.

8.  On December 6, 2004, the task force met to discuss the floodplain management and CRS actions to be considered in the consultation. During this session, the task force also discussed proposed changes to the CRS program to address the Court's concerns identified in the Order.

9.  During this session, the task force identified the following obstacles FEMA may encounter during its consultation:

- The fact that the NFIP is a voluntary program and FEMA does not have the authority to prohibit development or enforce land use laws;

- More restrictive minimum floodplain management criteria may cause "takings" lawsuits against FEMA, and state and local governments implementing the ordinances;

4

- FEMA must administer a national program and cannot revise the regulations in a manner that may adversely impact on the implementation of a uniform, national flood insurance program;
- Development is heavily regulated by state and local land use and environmental laws and it is difficult to isolate FEMA's potential impact on development; and
- Traditional biological assessment approaches may not be appropriate to analyze the impact of FEMA's implementation of the NFIP because it is a voluntary, regulatory program implemented at the community level.

10.   On December 7, 2004, the task force met to discuss the December 6th meetings and the interrelationship between mapping and floodplain management. The task force discussed an agenda for the NMFS/FEMA conference call set for 2:00 p.m. on December 7th. FEMA agreed that it would discuss the following with NMFS: the complexities of the NFIP, scope of consultation; the Order; and reasonable time frames for concluding a consultation.

11.   On December 7, 2004, FEMA initiated a conference call with NMFS. The agencies discussed the impact implementing the Order will have on both agencies' financial and human resources, and FEMA's proposed approach to consultation. The agencies agreed to meet on January 5-6, 2005 in Seattle, Washington to discuss FEMA's implementation of the NFIP, NMFS' ESA processes and requirements, and a schedule for submitting all necessary documents pursuant to 50 C.F.R. § 402.14(c).

Present on the call for FEMA were:

- Michael Grimm, Section Chief, Community Assistance Branch;
- Michael Robinson, Senior Program Analyst, Community Assistance Branch;
- William Blanton, Hydraulic Engineer, Hazard Identification Section, Mitigation Division;

5

- Kelly Bronowicz, Hydraulic Engineer, Hazard Identification Section, Mitigation Division
- Mark Eberlein, Environmental Officer, FEMA Region X;
- Carl Cook, Director, Mitigation Division, FEMA FEMA Region X;
- Barbara Montoya, Trial Attorney;
- Amy Weinhouse, Program Attorney; and
- Jordan Fried, Associate General Counsel;

Present on the call for NMFS were:

- Melanie J. Rowland, Staff Attorney, National Oceanic & Atmospheric Administration (NOAA);
- Steve Landino, Washington State Director, NOAA;
- David J. Hirsh, Senior Program Analyst, Habitat Conservation Division, NOAA; and
- Bonnie Shorin, Program Analyst, Habitat Conservation Division, NOAA.

12.   On December 14, 2004, the task force met to discuss its preparation of a presentation of the NFIP for NMFS, the interrelationship between mapping and minimum floodplain regulations, and identifying alternative approaches to analyze the NFIP's impact on Chinook salmon.

13.   On December 22, 2004, the task force met to discuss whether the actions to be considered had an impact (whether direct, indirect, or cumulative) on Chinook salmon in the Puget Sound area. The task force also discussed the slide presentation it planned to present to NMFS and a general agenda for the upcoming NMFS meeting.

14.   On January 4, 2005, members of the task force from FEMA Headquarters met with their Regional counterparts in Bothell Washington. During this meeting, FEMA finalized its list of specific actions to be considered in the consultation. FEMA also discussed the possible outcomes of the consultation, the various approaches to analyze cumulative effects of the NFIP in the Puget Sound, and what types of "reasonable and prudent measures" or "terms and conditions" might be feasible if it were determined that some of its actions were likely to adversely affect the Chinook salmon.

The following task force members were present during this meeting:

- Michael Grimm, Section Chief, Community Assistance Branch;
- Michael Robinson, Senior Program Analyst, Community Assistance Branch;
- Kevin Long, Hydraulic Engineer, Hazard Identification Section, Mitigation Division;
- Kelly Bronowicz, Hydraulic Engineer, Hazard Identification Section, Mitigation Division;
- Mark Eberlein, Environmental Officer, FEMA Region X;
- Carl Cook, Director, Mitigation Division, FEMA Region X;
- Barbara Montoya, Trial Attorney; and
- Amy Weinhouse, Program Attorney.

15.  On January 5, 2004, the FEMA task force met with NMFS in Seattle, Washington. The task force presented a comprehensive overview of the NFIP, which included a 100-slide PowerPoint presentation. The NMFS participants questioned FEMA on topics such as climate change, the one-foot standard for floodways, the consequences of not updating FIRMs to reflect actual changes on the ground, considering habitat damage in the Letter of Map Revision and Conditional Letter of Map Revision process, and the possibility of establishing regional conditions.

The following FEMA Task Force members were present during this meeting:

- Michael Grimm, Section Chief, Community Assistance Branch;
- Michael Robinson, Senior Program Analyst, Community Assistance Branch;
- Kevin Long, Hydraulic Engineer, Hazard Identification Section, Mitigation Division;
- Kelly Bronowicz, Hydraulic Engineer, Hazard Identification Section, Mitigation Division;
- Mark Eberlein, Environmental Officer, FEMA Region X;
- Carl Cook, Director, Mitigation Division, FEMA Region X;
- Barbara Montoya, Trial Attorney; and
- Amy Weinhouse, Program Attorney;

The following NMFS staff was present during this meeting:

- Melanie J. Rowland, Staff Attorney, National Oceanic & Atmospheric Administration (NOAA);
- David J. Hirsh, Senior Program Analyst, Habitat Conservation Division, NOAA;
- Bonnie Shorin, Program Analyst, Habitat Conservation Division, NOAA; and

7

- Dee Ann Kirkpatrick, Biologist, Habitat Conservation Division, NOAA.

16. On January 6, 2005, FEMA presented to NMFS its view of FEMA's role in the development process and the different layers of state and local regulation in force in the Puget Sound area. The agencies then discussed: (1) the scope of the consultation and how to proceed; (2) the environmental baseline and whether or not the other layers of state and local regulation are considered in establishing it; (3) how to analyze effects to determine if there is an appreciable reduction or if the effect is insignificant and discountable; (4) the biological needs of the species; and (5) the difficulty in determining how the NFIP influences development. The agencies also discussed whether FEMA should expand the scope of consultation to include all listed species under NMFS jurisdiction within the State of Washington ("listed species").

17. During this session, the agencies discussed a reasonable timeframe to complete the consultation. Due to the expanded scope of this consultation and the difficulties anticipated, the agencies agreed thirteen months would be a reasonable and realistic timeframe for FEMA to submit to NMFS a biological assessment or similar 50 C.F.R. § 402.14(c) document analyzing the impact of the NFIP on the listed species. NMFS and FEMA also agreed FEMA should hire a biologist and other necessary experts to assist it in analyzing the impacts of the program on the listed species.

18. The FEMA task force and NMFS agreed it will take approximately thirteen months for FEMA to supplement the necessary information pursuant to 50 C.F.R. § 402.14(c) because:

- FEMA does not have an existing contract to immediately hire a biologist and other necessary experts, and as such, it will take FEMA a minimum of six weeks to comply with the Federal Acquisition Regulations ("FAR")

and contract with the consultants. See 48 C.F.R. §§ 3001.104- et seq. Pursuant to the FAR, FEMA needs to prepare a scope of work for the contract, develop a bid proposal, advertise the contract, hold it open for the required 30 day response period, evaluate the proposals, and award the contract.

- FEMA will expand its consultation beyond the Order and will consider the impacts of the implementation of the NFIP has on all listed species (15) under NMFS' jurisdiction in the State of Washington.

- FEMA must educate its consultants on the complexities of the NFIP, specifically (1) the manner in which FEMA maps the nation's floodplains, (2) the models and studies it utilizes to determine the BFE, SFHA, and floodways, (3) the manner in which FEMA updates the maps; (4) the relationship between the maps and floodplain management; (5) FEMA's minimum floodplain management regulations and building performance standards; (6) the role of the state and local governments in floodplain management; and (7) the CRS program. Based on prior experience, typically, new local community planners need several weeks of on-the-job study and training to understand the intricacies of the NFIP and the local land use ordinances. FEMA concludes it will take several weeks to educate the consultants on the NFIP;

- FEMA will have to work closely with NMFS to discuss novel approaches to consultation and to educate them on the NFIP. NMFS needs to have a good grasp of the NFIP to enable it to develop potential reasonable and prudent alternatives/measures (they cannot provide alternatives/measures that are outside FEMA's legal authority and jurisdiction and are not economically and technologically feasible);

- Based on the type of action involved--the indirect regulatory action-- extensive research must be conducted to establish the environmental baseline;

- There are a large number of interrelated actions that need to be evaluated. The interrelationship between mapping, regulations, insurance, and CRS will be difficult to state in a clear and concise manner sufficient to analyze the impacts of this broad, locally implemented program on the listed species;

- FEMA anticipates encountering difficulties in determining indirect and cumulative effects due to the type of action (program implementation of the various components at the various jurisdictional levels versus an actual construction type project); and

9

- Identifying modifications to the program would require analysis to determine if the measures would achieve the desired outcome, i.e., to reduce the direct, indirect, and cumulative effects. Careful scrutiny will be required to assure that the measure would not have an undesirable outcome.

19. FEMA inquired of NMFS how long it would take FEMA to complete formal consultation. NMFS responded it anticipates it will take approximately six months to conclude the consultation once it has received from FEMA all requisite information pursuant to 50 C.F.R. § 402.14(c).

20. On January 11, 2005, the task force briefed David Maurstad, Acting Director, Mitigation Division/Acting Federal Insurance Administrator, and other senior management, on the January 5-6, 2005 meeting with NMFS. The task force recommended FEMA should take all necessary steps to enter into a contract with a biologist and other necessary experts and consult with NMFS on the NFIP. Senior management concurred in the approach developed thus far.

21. FEMA is currently developing a scope of work proposal to hire the consultants.

22. In accordance with 28 U.S.C. § 1746, I hereby declare and affirm under penalty of perjury that the above statements are true and correct to the best of my knowledge, information and belief.

Signed this 14 day of January 2005.

Michael M. Grimm, Section Chief
Community Assistance Section
Risk Assessment Branch
Mitigation Division
Federal Emergency Management Agency